### In re KAISER STEEL CORPORATION, Debtor.

#### Bankruptcy No. 87B01552E.

United States Bankruptcy Court, D. Colorado.

June 10, 1987.

Craig Christensen, Hal Lewis, Sherman and Howard, Denver, Colo., for debtor.

Michael Katch, John Wasserman, Katch, Anderson & Wasserman, Denver, Colo., and Booth, Marcus & Pierce, New York City, for Official Unsecured Creditors Committee—Kaiser Steel.

Harry Sterling, Barry Weinert, Sterling and Miller, Denver, Colo., for Official Unsecured Creditors Committee—Kaiser Coal.

Glenn Merrick, Davis, Graham and Stubbs, Denver, Colo., and Michael Hopkins, Milbank, Tweed, Hadley & McCloy, New York City, for The Chase Manhattan Bank.

## OPINION AND ORDER FOR PAYMENT OF FEES AND EXPENSES

CHARLES E. MATHESON, Bankruptcy Judge.

This matter was initiated by the filing of motions by the Debtor and by the Official Unsecured Creditors Committee for Kaiser Steel Corporation ("Committee"), each seeking the entry of an order framing a special procedure to be used in these complex cases for allowing and paying professional fees and for the reimbursement of expenses to the members of the Committee. Additionally, the committee in the jointly administered case for Kaiser Coal ("Coal Committee") has sought approval to employ Arapahoe Energy Consultants and has similarly sought approval of a procedural order to provide for the allowance and payment of the fees and expenses of the consultant. The motion filed by the Debtor specifies procedures to be used for the allowance and payment of interim compensation to professionals pursuant to the provisions of 11 U.S.C. § 331, but contains

no provision for the reimbursement of expenses of members of the Committee. Similarly, the Committee's proposed order deals only with the right and ability of the Committee members to seek reimbursement for expenses.

The Debtor has objected to the proposed order of the Committee arguing that the interim reimbursement of expenses of the Committee is not allowable under the Code. In addition, the Chase Manhattan Bank, Banque Baribas, Mellon Bank and the Royal Bank of Canada (all of whom are secured lenders in the Kaiser Coal case) have filed objections to the Coal Committee's application to hire the consultant and to the Debtor's proposal for the payment of professional fees. In part, the objections of the Banks are based on arguments that the relief sought is not allowable under the Code, and in part on the argument that the Debtor should not be permitted to utilize cash collateral to make any such payments, at least as requested. The cash collateral issue raised by the Banks is not presently before the Court. Thus, this opinion will deal with the issue of the procedures to be utilized for the allowance of fees and the reimbursement of expenses and the authority of the Debtor to pay any such allowed fees and/or expenses. The ability of the Debtor to pay any such allowed fees and expenses, whether from cash collateral or otherwise, is another issue to be addressed at another time or at a cash collateral hearing.

■ At the hearing that was held to consider the proposals, the Court addressed on the record the question of whether interim fee allowances to professionals under Section 331 of the Code should be limited to 75% of the fees sought. The Court is aware of cases holding that interim fee applications should be allowed at some reduced percentage of what has been sought. See, e.g., *In re General Coffee Corporation*, 39 B.R. 7 (Bankr.S.D.Fla.1984). However, the Court disagrees with such holdings.

The legislative history underlying the Bankruptcy Code makes it clear that professionals authorized to be employed pursuant to 11 U.S.C. § 327 to provide services are to be compensated at a rate consistent with that applicable to normal commercial transactions. The concept of penury for professionals espoused in the case of *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429 (5th Cir.1968), was expressly overruled by the legislature, and the concept of notions of economy of the estate in fixing fees was declared to have no place in proceedings under the Code. *See*, 124 Cong.Rec. H11047–117 (daily ed. Sept. 28, 1978) (statement of Sen. Edwards). Complex bankruptcy cases such as these consolidated proceedings cannot function without the serious and dedicated efforts of qualified professionals. The result of such efforts is significant fee requests to be paid out of the estate. Requiring professionals, who must look to the estate for payment of their fees, to finance the administration of the estate by carrying 25% or more of their fees for the term of the bankruptcy case is manifestly unreasonable. Timely payment of billings is an inherent aspect of providing services. Certainly creditors' counsel would rebel at a partial payment arrangement with their clients, and limitations of this nature should not be imposed on those seeking compensation from the estate.

There is a further reason for not imposing an automatic hold-back on fee allowances. This is commonly done as a hedge pending final hearings on fee requests at the close of the estate. The concept is that it protects the estate from having paid excess fee awards and allows the Court to examine the total compensation to be paid professionals at the close of the estate. In part it is used as a vehicle to allow the Court to avoid, on an interim basis, close inspection of fees charged and the reasonableness thereof. However, in cases such as this, if the question of the reasonableness of fees being charged by the professionals is not addressed on a current basis, the Court will soon be facing accumulated fee claims of such a magnitude that it is virtually impossible to assess, on any realistic basis, the reasonableness of the fees. It is far better to consider fully, on a periodic basis, the fees being requested

while the evidence of what has been involved, what hearings held and what results achieved are all relatively fresh in the minds of all parties and the Court. For these reasons, the Court will not restrict in advance fee allowances to a fixed percentage of the requested amounts. *In re Wilson Foods Corporation*, 36 B.R. 317 (Bankr.W.D.Okla.1984).

The question of the allowance of the reimbursement of expenses to members of committees appointed pursuant to the provisions of 11 U.S.C. § 1102 is more difficult. It is clear that reimbursement of such expenses is not provided for under Sections 330 or 331 of the Code. Those sections deal only with the fees and expenses for professionals appointed pursuant to Section 327. Authority, if any, for the allowance of the reimbursement of such expenses out of the estate must, therefore, be found in Section 503 of the Code.

It has been observed that, historically, reimbursement to a committee or committee members was provided for pursuant to Bankruptcy Rule 11–29 of the Bankruptcy Rules adopted under the old Bankruptcy Act. Those rules remained in effect after the adoption by Congress of the Bankruptcy Code. Arguably, nothing in the Code or in the present Bankruptcy Rules deals directly with the allowance of the expenses of a committee appointed pursuant to Section 1102, although the Advisory Committee Notes to Bankruptcy Rule 2016 indicate that the Rule contemplates such allowances.

In considering this issue the initial focus, in many instances, has been on the provisions of Section 503(b)(3)(D) of the Code, which states that there can be allowed as administrative expenses:

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under Section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ...

The impact of that section was addressed in this District by Bankruptcy Judge (now 10th Circuit Justice) Moore in the case of *In re Grynberg*, 19 B.R. 621 (Bankr.D.Colo. 1982).

The *Grynberg* decision involved the question of the allowance of reimbursement of travel expenses to individual committee members at the close of a Chapter 11 case. Judge Moore concluded that § 503(b)(3)(D) did not bar such applications and thus, the applications made should be allowed. His holding was predicated on a finding that the official committee had played a substantial role in the case and that the individual members of the committee, by participating thereon, had made a substantial contribution. Thus, he allowed reimbursement of their claimed expenses in the absence of any objection or opposition. In reaching his decision, Judge Moore explicitly held that Section 503(b)(3)(D) bars compensation or reimbursement for Chapter 11 committees appointed under Section 1102.

The *Grynberg* approach has recently been expanded upon in the case of *In re Evans Products Company*, 62 B.R. 579 (D.C.S.D.Fla.1986). The facts in *Evans* are particular pertinent here. In *Evans* the committee had proposed to the bankruptcy court a procedure not unlike the procedure here proposed to allow for the current interim reimbursement of the out-of-pocket expenses of committee members. The bankruptcy court had denied the application, even though the motion was not opposed by any party in interest, holding that there is no statutory authorization under the Bankruptcy Code for the reimbursement of the out of pocket expenses of members of the committee. The committee appealed the bankruptcy judge's order and the district court, after considering the matter, reversed the bankruptcy court and remanded the matter for further consideration. In reaching its decision, the district court held that the bankruptcy judge was correct in finding, as a matter of law, that the relevant standard for determining reimbursability is "substantial contribution" by

the person or committee making the request. The court then held:

> However, this Court holds that expenses incurred by the members of a § 1102 committee, in furtherance of the authorized business and mission of that committee, are presumed to be expenses incurred for the betterment of the estate and to the benefit of the estate. The only expenses of § 1102 committee members that should not be reimbursed are those that are shown to be frivolous or not in furtherance of the betterment of the estate. The § 1102 committee member who seeks reimbursement must make some showing to the bankruptcy judge so that the judge can distill those expenses that are reimbursable from those that are not reimbursable from those that are. *Ibid.* at 583.

See also *In re GHR Energy Corp.,* 35 B.R. 539 (Bankr.D.Mass.1983); *In re White Motor Credit Corporation,* 50 B.R. 885 (Bankr.N.D.Ohio 1985).

An alternate approach has also been used by the courts to allow for the reimbursement of expenses to committee members. The question was most persuasively addressed by the court in the case of *In re Global International Airways Corporation,* 45 B.R. 258 (Bankr.W.D.Mo.1984). The court there looked to the legislative history of the Bankruptcy Code concerning the duties to be performed by the official committees. After considering the matter, the court held:

> This Court concludes, therefore, that the expenses of the committees appointed under Section 1102, if actually incurred and necessary to performance of committee duties, may be allowed as administrative expenses under 503(b)(1)(A). The statutory duties imposed upon the committee presume that such activities are essential to the preservation of the estate. *Ibid.* at 261.

As to the provisions of Section 503(b)(3)(D), the court read those provisions

> as language enlarging those parties who may be reimbursed if they make a "substantial contribution in a case under chapter ... 11". There is nothing in

Section 503(b)(3)(D) that compels the reading that it bars reimbursement to appointed committees. Rather this reading establishes a two tier test: one for official committees and another for volunteer committees in terms of qualifying for reimbursement. An official committee is reimbursed if it performs its statutory duties. A volunteer committee is reimbursed if it makes a substantial contribution. *Ibid* at 261. See also, *In re General Oil Distributors Inc.,* 51 B.R. 794 (Bankr.E.D.N.Y.1985).

■ This Court concurs with the opinion in the *Global* case. By its terms, Section 503(b)(3)(D) does not exclude reimbursement of the expenses to an official committee. Rather, that section only applies to exclude reimbursement to unofficial committees unless they can be found to have made a substantial contribution to the case.

Support for the view of the *Global* case can be gleaned from the legislative history of the Code. Under the original Senate bill the forerunner to present Section 1102 provided that in public cases a trustee would be appointed as in the proceedings under old Chapter X. With the appointment of a trustee to protect the interests of the creditors and stockholders, the Senate bill perceived no need for official committees. In discussing this proposal, the Senate report states:

> There is no need for the election or appointment of committees for which the appointment of a trustee is mandatory. In the case of a public company there are likely to be several committees, each representing a different class of security holders and seeking authority to retain accountants, lawyers, and other experts, who will expect to be paid. If in the case of a public company creditors or stockholders wish to organize committees, they may do so, as authorized under Section 1109(a). Compensation and reimbursement will be allowed for contributions to the reorganization pursuant to Sections 503(b)(3) and (4). S.Rep. No. 989, 95th Cong., 2d Sess. (1978), at page 114, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5900.

Thus, it appears clear that in the view of the Senate, Section 503(b)(3) is only applicable to unofficial committees. Nothing is said in the legislative history specifically addressing the allowance of reimbursement of expenses to the official committees or their members.

Other courts have similarly found that reimbursement of expenses of the official committee for their members are properly allowable as an administrative expense under Section 503(b)(1). In the case of *In re Toy and Sports Warehouse, Inc.*, 38 B.R. 646 (Bankr.S.D.N.Y.1984), Bankruptcy Judge Schwartzberg held:

> Manifestly, it is important that creditors be encouraged to participate in the reorganization process, since the Bankruptcy Code is so structured as to contemplate negotiations and give and take between the debtor and the creditors. It is in this context that knowledgeable creditors should take an active role in determining the course that the reorganization case should take, including an investigation and examination into the conduct of the debtor's affairs and the negotiations necessary for the confirmation of the debtor's plan of reorganization. Such participation by individual creditors as members of an official creditors' committee should not be chilled by requiring them to finance their travel and out of pocket expenses incurred in attending official creditors' committee meetings. Such costs are properly necessary and part of the recoverable administrative expenses contemplated under the Bankruptcy Code and Rules. *Ibid* at 648.

See also, *In re General Oil Distributors, Inc.*, 51 B.R. 794 (Bankr.E.D.N.Y.1985); *In re GHR Energy Corp.*, *supra; In re Aviation Technical Support, Inc.*, 72 B.R. 32 (Bankr.W.D.Tex.1987).

The Court is aware of cases such as *In re Lyons Machinery Company, Inc.*, 28 B.R. 600 (Bankr.E.D.Ark.1983) and *In re Interstate Restaurant Systems, Inc.*, 30 B.R. 32 (Bankr.S.D.Fla.1983) which have held that expenses of official committees cannot be reimbursed out of the estate. The Court finds these cases to be unpersuasive and contrary to the policy underlying Section 1102 of the Code.

As the Code is presently structured, an active and aggressive creditors' committee is essential to the reorganization process. Certainly, that fact is explicitly recognized in the Code's mandate that a committee "shall" be appointed, but the committee's role can be wholly impaired if creditors, already financially injured by the debtor's inability to pay, must personally finance the expenses which are necessary to active participation, particularly in cases such as these consolidated proceedings which have operations and creditors spread over many states. In these cases, for example, the Court has been advised that the largest outstanding obligation is approximately $250,000,000.00 of debt for unfunded pension liabilities for employees of these debtors. The class of participants in those pension funds is large and is represented by several individuals who serve on the Committee. Their input into the reorganization process is critical, but their continued participation as individuals can place an enormous financial burden on them if their reasonable travel and maintenance expenses incurred in performing their duties cannot be reimbursed out of the estate.

■ Having considered the authorities and the underlying policies, the Court concludes that members of the committees appointed pursuant to Section 1102 of the Code, and/or the committees themselves, can be reimbursed out of the estate for out-of-pocket expenses necessarily incurred in fulfilling their duties. The allowance of such reimbursement as an administrative expense of the estate can be justified either under Section 503(b)(1), in accordance with the holding in the *Global* case, *supra*, or, with respect to the individuals serving on such committees, under Section 503(b)(3)(D) since they individually make a substantial contribution to the reorganization by agreeing to serve on the committees. As to such individuals, the Court is reasonably entitled to presume the existence of such a contribution until such time as an objection is made that the Committee is not fulfilling its role or that the expenses claimed are

frivolous or not in furtherance of the betterment of the estate. *In re Toy and Sports Warehouse, Inc., supra; In re Grynberg, supra.*

Having determined that such expenses are "allowable", the Court must still address the question of when and under what circumstances such allowed expenses should be paid. The Code does not generally speak in terms of the payment of claims, but in terms of "allowance." The only section specifically providing for interim payments or disbursements is Section 331 pertaining to interim allowances to professionals.

■ It has been suggested that in a Chapter 11 case only Section 331 payments can be made on an interim basis. *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981). However, the only authority cited for that dicta is Section 1129(a)(9) of the Code, which section requires all administrative expenses to be paid on the effective date of a plan, but certainly does not prohibit earlier payment. The Court is of the opinion that the better view is that the determination of when administrative expenses are to be paid is within the discretion of the Court. *In re Verco Industries*, 20 B.R. 664 (Bankr.App. 9th Cir.1982); 3 L. King, *Collier on Bankruptcy*, para. 503.0, p. 503–05 (15th ed. 1979).

■ When it comes to the payment of administrative expenses, there are no priorities established by the Code except for super-priority claims under Section 507(b). All administrative claims which are allowable under Section 503 share pro rata on the same basis. *In re IML Freight Inc.*, 52 B.R. 124 (Bankr.D.Utah 1985); *In re Western Farmers Association*, 13 B.R. 132 (Bankr.W.D.Wash.1981); *In re Callister, supra.* Certainly, it is clear that if some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata. *In re Coulter*, 53 B.R. 958 (Bankr.D.Colo.

1985); *In re Energy Cooperative Inc.*, 55 B.R. 957 (Bankr.N.D.Ill.1985).

■ In the present case no objections have been raised to the interim payment of fees or expenses on the grounds that the estate will ultimately be insufficient to pay the administrative costs of these Chapter 11 cases. At the hearing held on these matters it was represented by Debtors' counsel that there is an expectation that there will be sufficient assets available to pay the administrative costs of the Chapter 11, although from time to time cash flows may be insufficient to provide for the payment of all allowed administrative expenses on an immediate basis. These cases are in their early stages and, at the present time, the Debtor is in the best position to know the extent of its financial resources. The Debtor also has an ongoing need to be able to manage its cash and may further face restrictions from cash collateral orders that will limit the Debtor's ability to pay allowed administrative claims in all cases. However, in the absence of objections asserting a probable lack of funding to ultimately provide for the payment of all administrative claims, and in light of the representation by Debtor's counsel, the record is sufficient to allow the entry of an order authorizing interim payments to be made on allowed claims. *In re Wilson Foods Corp., supra.* Any such order is subject to revocation or amendment at any time upon the objection of a party and the showing of a lack of probable ability on the part of the Debtor to be able to pay all administrative claims.

The final question which must be resolved concerns the procedures to be utilized for the allowance of interim professional fees and the payments of such fees and the reimbursement of committee expenses. As to professionals, the interim allowance and payment of their fees is basically governed by Section 331 of the Code. That section provides that professional persons employed under Section 327 or 1103 of the Code may apply to the Court

not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits,

for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

■ In the present proceeding it is proposed that the professionals will be allowed to submit their bills to the Debtor on a monthly basis and to be paid 75% of the amount of such billings. All such payments are then subject to the requirement that the professionals file periodic applications with the Court for allowance after notice and a hearing. In the Court's view, Section 331 does not prohibit the adoption of such procedures so long as it is clear that the monthly payments made are subject to recapture from the professionals at the time the interim applications are filed with the Court for the Court's approval. In cases of the magnitude of the Kaiser proceedings, the billings for professional fees and for expenses incurred in travel and in providing services will be substantial. Following the normal practices under Section 331 effectively requires counsel to defer payment for close to six months when time is allowed to prepare and submit fee applications, give the necessary notices and allow the Court and creditors to have the opportunity to review the fee applications. Delays of that magnitude simply are not consistent with normal commercial practices and can have a significant chilling effect on the ability of the Debtor and the Committees to retain counsel and services of a level needed in order to effectively administer the estate.

Consistent with the views herein expressed, the Court now enters the following order setting forth the procedures to be utilized for professionals and members of the Committee, as well as the Committees themselves, to seek and receive payment and allowance of interim applications for fees and the reimbursement of expenses.

NOW, THEREFORE, IT IS HEREBY ORDERED:

A. On or before the fifteenth day of each month the committee members and the attorneys, accountants and other professionals whose employment by a debtor-in-possession or a committee appointed under 11 U.S.C. § 1102 shall have been authorized by this Court may submit statements to Kaiser Steel Corporation by sending said statements for interim compensation to the appropriate individuals as set forth in Exhibit A(1) for reimbursement of expenses paid or incurred on or before the last day of the preceding month in the instance of committee members or (2) for compensation and reimbursement of expenses paid or incurred on or before the last day of the preceding month in the instance of attorneys, accountants and other professionals. Any expense or compensation not billed in one month may be billed in a subsequent month.

B. All statements submitted to one or more of the debtors-in-possession in accordance with this order shall be delivered to: Kaiser Steel Corporation, attention: Ed Stewart, 102 South Tejon, Suite 400, Post Office Box 2679, Colorado Springs, Colorado 80901–2679, and shall contain the following information in either schedule or narrative form:

1. An identification of the debtor or entity for which the fees or expense reimbursements are sought.

2. *With respect to all expenses incurred by committee members and those expenses of professional persons incurred away from their respective offices,* the amount, the date incurred and the nature thereof. The debtors-in-possession shall reimburse such expenses in accordance with the uniform guidelines as to reimbursable expenses which are attached hereto as Exhibit A and pursuant to a uniform procedure to be developed by the debtors-in-possession (which may include appropriate forms by which such requests for reimbursement shall be submitted.)

3. *With respect to compensation to be paid there shall be provided a daily accounting of the services rendered which shall include* the date of the service rendered, an identification of the

person or persons who performed the service, the time devoted in rendering the service on the day in question, and a description of the services so rendered.

4. *With respect to office expenses, costs and other special charges*, a monthly description of all such charges (e.g., "long distance phone charges," "duplicating expense", etc.), and a description of the method by which such charges are calculated.

C. Statements submitted by attorneys, accountants and other professionals shall be based upon their respective normal and customary hourly rates for a case of this type as they exist from time to time. At least 10 days before the first interim payment is sought, a schedule of such rates, together with a brief biographical sketch of each professional who is expected to devote a substantial portion of his/her time in rendering services in connection with these cases shall be filed by each attorney, accountant or other professional with the Court and served upon the persons listed on Exhibit B.

Not less than ten (10) days notice of any proposed change in such hourly rates shall be given in the same manner. Any party in interest may request a hearing before this Court as to the reasonableness of any such rates within such 10–day period. Only in the event a hearing concerning the reasonableness of the hourly rates is timely requested shall payments for interim compensation based on those changed rates be suspended until this Court shall have ruled thereon. If no hearing is timely requested, payments shall be made pursuant to the changed rates as set forth in the notice.

D. All statements submitted in accordance with paragraph B above shall be reviewed by Kaiser Steel Corporation and, if acceptable and if no hearing under paragraph C above is pending, such statements other than those as to which a hearing under paragraph C is pending will, subject to paragraph E, be paid within twenty (20) days after the fifteenth of that month; (provided however, to the extent the Debtors are unable to pay all attorneys, accountants and other professionals and all reimbursable expenses of committee members in the percentages stated, they will have their monthly bills paid *pari passu*, with each claimant receiving the same reduced percentage of its fees and expenses.)

E. Subject to paragraphs D and F, payments shall be made to attorneys, accountants and other professionals at the rate of 100% of expenses and 75% of compensation for services rendered, and to committee members, 100% of actual and reasonable expenses incurred.

F. Recognizing the Debtor's cash flow situation, a committee will be formed composed of the attorney for the Debtor, the attorney for the Creditors' Committee of Kaiser Steel Corporation, and the attorney for the Creditors' Committee of Kaiser Coal Corporation to determine how much of the professionals' fees and Committee members' expenses can be paid. To the extent they determine the Debtors do not have sufficient cash flow to pay all requests on a monthly basis they will be authorized to instruct the Debtor to pay a specified percentage of fees and expenses and to withhold that portion of the fees and expenses which cannot be paid and pay such fees and expenses the next such time as it is feasible. If the Committee cannot unanimously agree on whether the Debtor has sufficient cash flow to pay the claimed amounts, or percentage, they shall request a hearing before the Bankruptcy Court to make such determination.

G. Within fifteen (15) days following the end of each three-month period, each party who has sought reimbursement of expenses or interim compensation shall file with the Court and serve upon the persons listed in Exhibit B hereof, an application for approval of the payments actually billed during the preceding three-month period (the first such application shall cover the period commencing February 11, 1987 and ending May 31, 1987, and shall be filed on or before July 15, 1987.) Counsel for any creditors' committee may file a single application on behalf of all the committee members for reimbursement of expenses. The applications may be approved by the Court, in whole or in part, after notice and

a hearing. If any party who has received one or more payments during a three-month period in accordance with paragraph F above shall fail to file an application for approval of those payments so received as required by this paragraph G, then Kaiser Steel Corporation shall not pay such party any further monthly payments (whether for reimbursement of expenses or for compensation) unless and until an application for approval of previously made payments shall have been filed with the Court, or unless otherwise ordered by the Court.

H. At any time on or after August 31, 1987, any professional person who has theretofore received interim compensation at 75% of customary hourly rates, may file an application with the Court to receive as interim compensation amounts equal to the previously unpaid 25% ("Special Interim Compensation"). No professional person shall apply for Special Interim Compensation more than semi-annually. Any application for Special Interim Compensation which shall be filed shall be heard at the same time and in the same manner as the applications described in paragraph F above. Nothing contained herein shall be construed as giving any party any right to be awarded any such Special Interim Compensation or to prejudice the right of any entity to object to the Court's awarding all or any portion of the Special Interim Compensation sought.

I. Each applicant shall give notice of the filing of their application filed pursuant to this order to all entities entitled to notice under this Court's Order of February 12, 1987 granting the "Motion to Limit Notice."

J. Nothing contained herein shall be construed to prejudice the right of any professional or committee member to seek an award of such additional compensation or expenses incurred in excess of the Uniform Guidelines at the conclusion of one of these cases as may be appropriate under the provisions of §§ 330 and 503(b) of the Bankruptcy Code, 11 U.S.C. §§ 330, 503(b).

K. Any entity whose employment has not been previously approved by this Court, but who desires the allowance and payment of an administrative expense under Bankruptcy Code § 503, shall file an application for such allowance with the Bankruptcy Court and shall serve a copy thereof upon the persons listed in paragraph C hereof. The form of each such application and the information contained therein shall conform to the fullest extent appropriate to the other provisions of this Order. Nothing contained in this paragraph shall be construed as giving any person any right to have any administrative expense allowed or paid when sought, nor to prejudice the right of any party to object to the allowance or payment of all or any portion of the administrative expense alleged in any such application.

L. The failure by any party in interest, or the United States Trustee to object to any particular item in any of the applications referred to in this Order shall not be deemed to prejudice their rights to object to any similar matter in any future applications for compensation and/or reimbursement or expenses or to final allowances pursuant to Bankruptcy Code § 330.

M. All allowances of interim compensation and reimbursement of expenses made herein shall be without prejudice to any party in interest to seek reconsideration of the matter for cause.

N. All allowances of interim compensation and reimbursement of expenses made herein shall be subject to this Court's rights to review the same prior to the conclusion of these cases, and to the right and power of the Court to require a party to disgorge to the estate part or all of any interim payment which has been made.

O. Any professional who has received a retainer may exhaust the same and then shall be subject to these procedures.

P. Nothing in this order shall be deemed to grant the Debtors the right to use cash collateral for the payment of fees other than pursuant to a cash collateral order or a stipulation with the secured party. With respect to payments in the Kaiser Coal case, the Secured Lenders shall be afforded notice by the Debtor and an opportunity to be heard in respect to all submissions to the Debtor for payment of fees

and disbursements prior to any such payment.

Q. This order supersedes any and all orders previously entered herein concerning the interim payment of fees to professionals hired by the Debtor or any of the official committees.

## EXHIBIT A

### UNIFORM GUIDELINES FOR INTERIM COMPENSATION AND EXPENSE REIMBURSEMENT

A. *Attorneys' Monthly Statements and Interim Applications for Compensation.*

All monthly statements for interim compensation submitted by counsel for the Debtor should be mailed to the Chief Financial Officer, Kaiser Steel Corporation, 102 South Tejon, Colorado Springs, CO. 80901. The President will make recommendations with regard to each application as he deems appropriate.

All monthly statements for interim compensation for counsel to a Creditors' Committee should be initially submitted on or before the 15th day of each month to the Chair of the Committee or his designee. The Chair or his designee, after reviewing the statements, should forward the statement to Kaiser Steel Corporation Chief Financial Officer with a letter certifying that the services rendered are within the scope of the work requested and that the fees requested are reasonable and appropriate. Once these statements and letters of certification are received by Kaiser Steel Corporation, they will be handled in the same ways as are other attorneys' statements.

All monthly statements for interim compensation for Debtors' counsel shall be sent on or before the 15th day of each month to the President of the Debtor. The President, after reviewing the statement shall forward them to Kaiser Steel Chief Financial Officer for payment after he has certified that the services rendered are within the scope of the work requested and that the fees requested are reasonable and appropriate. The Accounting Department will review all numbers, calculations and otherwise serve as a double check on the President's and Chief Financial Officer's approval. Once the statements have been approved by the Chief Financial Officer, they can then be paid.

B. *Accountants' Monthly Statements and Applications for Compensation.*

The accountants employed by a Creditors' Committee shall submit their monthly statements to the Chair of the Committee or his designee. The Chair, or his designee, should review these monthly statements to assure that the work performed was within the scope of that requested and that the fees requested are reasonable and proper. Once this task is completed, the Chair, or his designee, should forward the statement together with a letter certifying the above, to Kaiser Steel's Chief Financial Officer. When the monthly statements have been received by Kaiser Steel Corporation, they will be processed as set forth above.

C. *Other Professionals.*

All other professionals employed by the debtors should submit their monthly statements for compensation to the Kaiser Steel Chief Financial Officer for review and approval. After the officer has reviewed these statements and approved same they will be submitted to the financial staff for final review and payment. Other professionals employed by the Creditors' Committee should submit statements to the Chair of the Committee or his designee. The Chair, or his designee, shall review such statements to assure that the work performed was within the scope of that requested and that the fees requested are reasonable and proper.

Internal reviews of monthly interim statements should be completed within fifteen (15) days of receipt and either paid or sent back with a statement of reasons as to why it is not being paid. At the quarterly fee hearing before the Court the Debtor will submit a summary report of all monthly statements paid and, where necessary, advise the Court as to its position on each statement.

D. *Guidelines Relating to Interim Compensation Requests.*

1. Monthly statements should be sufficiently detailed so as to permit identifying the project or tasks performed, the person performing the task and the hours spent by each employee of the firm rendering professional services.

2. The normal hourly rates for each involved individual employee of a professional organization for the calendar current year in which the application is being made should be set forth.

3. Where possible work should be performed by individuals whose level of experience is appropriate to the tasks; i.e., senior partners should not be charging senior partner rates for associate's work.

4. Where possible in connection with routine legal matters, a single attorney working on the matter should be sufficient. Obviously, in complex problems and certain types of litigation where various levels of expertise and experience should be brought to bear, more than one attorney from a firm is expected to function on the task. In general, we should prefer to see experienced attorneys rather than novices involved, and we expect attorneys and/or other professionals to function to the maximum extent possible within their own areas of expertise.

5. All quarterly interim applications filed by any professionals employed pursuant to Court Order should have attached copies of all monthly statements submitted for payment and should include a recap in summary form of the work performed and time spent as reflected in the interim statements.

6. Compensation for attorneys', accountants' and other professionals' time spent in the preparation of monthly billings or quarterly interim applications for compensation should be billed monthly and will be paid at a rate of 50% of the normal billing rate schedule.

E. *Reimbursement of Expenses.*

The question of expenses is a sensitive one. A statement of principles governing reimbursement of costs, which addresses itself to most significant issues, follows. To the extent that these guidelines are adhered to, the Debtors-in-possession will consider such expenses incurred to be reasonable and reimbursable, assuming that the professionals and members of the Committee act responsibly. With respect to Creditors' Committee members, it is the initial responsibility of the Chairman of the particular committee, or his designated representative, to review and approve the expense reports submitted by the Committee members and to prepare a monthly summary expense report covering all appropriate and legitimate expenses submitted for payment. The summary expense report to be submitted by the Chairman should include the total of all expenses of each Committee member broken down into the following general categories:

1. Air Transportation;
2. Ground Transportation;
3. Food and lodging;
4. Long distance telephone calls and Xerox; and
5. Miscellaneous.

This summary report should be accompanied by copies of the individual expense reports of each Committee member.

F. *General Principles Governing Reimbursement of Costs and Expenses.*

1. *Travel.*

Air travel is expected to be at regular coach fare.

2. *Hotels and Meals.*

Due to the wide variation in hotel and restaurant costs in the various cities in which meetings are held, it is not possible, in the Court's judgment, to establish a single guideline for these types of expenses. Since some meetings and conferences may be required to be held in New York some allowance for the high cost of travel in that city must be made. The Court, therefore, will recognize a two-tier system for meals and lodging as follows:

First-tier city of New York. The debtor estates will not reimburse for hotel charges and meals excluding tax, in excess of $240.00 per day, per person.

In all other cities, including Denver, unless it can be shown that hotel and restaurant charges are equal to first-tier cities, a daily lodging and meal allowance of $150.00 per day is approved.

Despite the above, all persons are requested to exercise discretion and prudence in connection with hotel and meal expenditures.

3. *Xeroxing.*

Xeroxing and duplication charges are to be billed at no more than 20 cents per page.

4. *Documentation.*

For all expenditures in excess of $25.00, documentation must be retained and made available to the Debtor-in-possession on request. Where possible, receipts should be obtained for all expenditures. Where one professional pays a bill which includes more than his own expenses, the number and identity of the individuals involved must be included in the expense reimbursement request.

G. *Creditors' Committee Expense.*

1. Actual and reasonable expenses of one representative of each Creditors' Committee member will be reimbursed as well as the expenses of the professionals employed by the Committee.

2. To the extent that any individual Committee member may employ any professional or have any professional attend meetings or perform other services, such professional's expenses and fees will not be reimbursed by the Debtors' estates unless allowed under Bankruptcy Code Section 503, 11 U.S.C. 503.

### EXHIBIT B

1. KAISER STEEL CORPORATION
   Debtors-in-Possession
   Attn: Charles McNeil, President
   102 South Tejon
   Colorado Springs, Colorado 80901

2. LEON C. MARCUS, ESQ.
   Booth, Marcus & Pierce
   Co-counsel for Creditors' Committee of Kaiser Steel Corporation
   79 Fifth Avenue
   New York, New York 10003

3. MICHAEL E. KATCH, ESQ.
   Katch, Anderson & Wasserman
   Co-Counsel for Creditors' Committee of Kaiser Steel Corporation
   1410 Grant Street, Suite D–110
   Denver, Colorado 80203

4. CARL A. EKLUND, ESQ.
   Roath & Brega, P.C.
   Attorneys for Creditors' Committee Retirees Subcommittee of Kaiser Steel Corporation
   One United Bank Center
   1700 Lincoln, Suite 222
   Denver, Colorado 80203

5. EDWARD WENDT
   New York Life Insurance Company
   Chairman of Creditors' Committee for Kaiser Steel Corporation
   51 Madison Avenue
   New York, New York 10010

6. HARRY M. STERLING, ESQ.
   Sterling & Miller
   Attorneys for Creditors' Committee of Kaiser Coal Corporation
   370 17th Street, Suite 3150
   Denver, Colorado 80202

7. TOM MEACHAM
   H & J Supply
   Chairman of Creditors' Committee for Kaiser Coal Corporation
   c/o Fairmont Supply Company
   Millcraft Center
   Washington, Pennsylvania 15301

8. ALAN JAY HARPER, United States Trustee
   202 Columbine Building
   1845 Sherman Street
   Denver, Colorado 80203

9. CRAIG A. CHRISTENSEN, ESQ.
   Sherman & Howard
   2900 First Interstate Tower North
   633 Seventeenth Street
   Denver, Colorado 80202