**In re The GEORGE WORTHINGTON CO., Debtor.**

**Nos. 89–3279, 89–3286.**

United States Court of Appeals, Sixth Circuit.

Argued July 24, 1990.

Decided Dec. 5, 1990.

the Northern District of Ohio

Alan R. Lepene, Thompson, Hine & Flory, Cleveland, Ohio, for Debtor.

Kathryn L. Roseen (argued), Dennis M. O'Dea, Keck, Mahin & Cate, Chicago, Ill., for plaintiff-appellant.

John Richards Lee, Chief of Branch of Corporate Reorganization, Chicago Regional Office, Chicago, Ill., for SEC.

Before JONES and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

The appellant, the official unsecured creditors' committee of the George Worthington Company, appeals the district court's denial of its application for reimbursement of administrative expenses from the bankruptcy estate. For the following reasons, we reverse the district court.

I.

The debtor, The George Worthington Company, filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") on September 24, 1986. Pursuant to section 1102(a)(1) of the Code,[1] the United States Bankruptcy Court appointed an official committee of creditors (the "Committee") holding unsecured claims against The George Worthington Company. The Committee consisted of twelve members from nine states and represented unsecured claims of over $13 million.

On May 18, 1987, the Committee submitted an interim application for reimbursement of administrative expenses to the bankruptcy court, requesting reimbursement of expenses totaling $12,050.94. There was no objection to the application by the debtor. On August 14, 1987, the bankruptcy court entered an interlocutory order denying the Committee's interim application. The bankruptcy court held that the Bankruptcy Code does not authorize reimbursement of administrative expenses to a creditors' committee appointed pursuant to section 1102(a)(1) of the Code (a "statutory committee"). On August 24, 1987, the Committee sought immediate review of the interlocutory order. On November 18, 1987, Chief Judge Battisti granted the Committee's motion for leave to appeal. The Committee filed a notice of appeal docketed as case No. C87–3394, requesting that the district court reverse the bankruptcy court's interlocutory order.

In July 1988, the Committee submitted a final application for reimbursement of expenses to the bankruptcy court, seeking reimbursement in the amount of $4,676.16. The final application also requested that the bankruptcy court reconsider its interlocutory order and award reimbursement of both interim and final committee expenses totaling $16,727.10. The bankruptcy court denied the final application for administrative expenses and refused to reconsider its interlocutory order. On September 29, 1988, the Committee filed a notice of appeal of the bankruptcy court's order. On February 27, 1989, District Judge Alice M. Batchelder entered an order in Case No. C87–3394, which denied the Committee's motion for leave to appeal the interlocutory order previously granted by Judge Battisti. On March 27, 1989, the Committee filed a notice of appeal from

---

1. Section 1102(a)(1) states:
   As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

Judge Batchelder's February 27, 1989 order. The appeal from the district court's February 27, 1989 order has been designated by this court as case No. 89–3279.

On February 28, 1989, the district court entered an order affirming the bankruptcy court's denial of the Committee's final application for administrative expenses and affirming the bankruptcy court's denial of reconsideration of its interlocutory order. The Committee filed a timely notice of appeal designated by this court as case No. 89–3286.

On September 12, 1990, the panel decided and filed an opinion, affirming the district court because it found no express authority in the Bankruptcy Code allowing for the reimbursement of an official creditors' committee's administrative expenses. 913 F.2d 316 On October 10, 1990, appellant moved this court pursuant to Rule 40 of the Federal Rules of Appellate Procedure for a rehearing. On October 11, 1990, the official committees appointed in the Chapter 11 cases of Allied Stores Corp./Federated Dept. Stores, Inc. filed a memorandum in support of rehearing as amici curiae. On October 16, 1990, the Securities and Exchange Commission entered a memorandum in support of the petition for rehearing.[2]

## II.

■ Appellant first contends that the district court violated the doctrine of law of the case in its February 27, 1989 order by denying the Committee's motion for leave to appeal the bankruptcy court's interlocutory order, which had previously been granted by Judge Battisti. Appellant argues that the well-established doctrine of law of the case provides that once an issue has been decided it cannot be relitigated. Because Judge Battisti granted the motion to appeal the interlocutory order, appellant argues that it was error for Judge Batchelder to deny it.

We find no merit in this argument. This court has stated:

A wide degree of freedom is often appropriate when the same question is presented to different judges of a single district court. To be sure, unfettered reexamination would unduly encourage efforts to shop rulings from one judge to another, and might seem an undesirable denial of comity between colleagues. Substantial freedom is desirable nonetheless, particularly since continued proceedings may often provide a much improved foundation for deciding the same issue.

*Cale v. Johnson,* 861 F.2d 943, 947 (6th Cir.1988) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (1981)). In the present case, the district court in its order of February 27, 1989 did not abuse its discretion by denying the Committee's leave to appeal the bankruptcy court's interlocutory order, even though leave to appeal had previously been granted. The court had before it an interlocutory order denying an interim application for administrative expenses and a final order denying a final application for administrative expenses. In order to avoid piecemeal litigation, the district court denied appeal of the interlocutory order and ruled on the merits of the final order. The purpose of the doctrine of law of the case is to promote judicial comity, the judicial system's interest in finality, and the effi-

**2.** The Securities and Exchange Commission (SEC) is a statutory party to these proceedings pursuant to Section 1109(a) of the Bankruptcy Code. In participating as a statutory party in corporate reorganization proceedings, the SEC acts as a special advisor to the courts in order to protect the interests of public investors. Under Section 1109(a), the SEC "may raise and may appear and be heard on any issue," but "may not appeal from any judgment, order, or decree entered in the case." Although precluded from initiating an appeal when appearing in this capacity, the SEC may join or participate in an appeal taken by others. *See Sheftelman v. Stan-*

*dard Metals Corp.,* 839 F.2d 1383, 1386 (10th Cir.1987), *cert. dismissed,* 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988); *Johns–Manville Corp. v. Equity Security Holders Comm.,* 801 F.2d 60, 61 (2d Cir.1986); H.R.Rep. No. 595, 95th Cong., 1st Sess. 404 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6360. Because the SEC may not initiate an appeal, it is technically an appellee when it participates in an appeal of the present issue in support of the appellant. *See In re Evans Prod. Co.,* 62 B.R. 579 (S.D.Fla.1986). In the present case, however, the SEC did not file a brief as an appellee before the panel.

cient administration of cases. These purposes were furthered, not violated, by the district court's February 27, 1989 order. For this reason, the district court's order of February 27, 1989 denying the motion for leave to appeal the bankruptcy court's interlocutory order is hereby affirmed.

### III.

Appellant next argues that the district court erred in denying the Committee's final application for administrative expenses in its February 28, 1989 order.

■ There is a very definite split of authority on the issue of whether an official creditors' committee, which must be appointed in a Chapter 11 reorganization pursuant to section 1102(a)(1) of the Code, is entitled to reimbursement of administrative expenses from the debtor's estate. The Bankruptcy Reform Act of 1978, Pub.L. 95–598, modified the Bankruptcy Act of 1898 and is codified as Title 11 of the U.S.Code. Under the Bankruptcy Act of 1898 (the "Act"), the expenses of a creditors' committee could be recovered from the estate in Chapter 11 cases under Rule 11–29(c) of the Rules of Bankruptcy Procedure. However, there is no express provision in the current Code or in the new Rules of Bankruptcy Procedure that were promulgated to implement the Code which carries forward the provisions of prior law that allowed for a statutory committee's reimbursement. Section 1102 of the Code mandates that a committee of creditors holding unsecured claims be appointed by the bankruptcy trustee in a Chapter 11 reorganization. Under section 1103, the committee may retain professional persons, including attorneys, accountants, and agents, with the court's approval. Compensation for these professionals is authorized under Section 330(a)(1). Section 503(b) of the Code deals with six categories of administrative expenses which can be paid from the debtor's estate to various entities. However, in this list, there is no express provision permitting reimbursement of administrative expenses to a committee appointed pursuant to section 1102 of the Code.

The bankruptcy courts are divided in their resolution of the dilemma presented by this omission; a majority have allowed reimbursement, but other courts have refused reimbursement because of the lack of specific statutory authority in the Code. No court of appeals has previously addressed the issue of whether such reimbursement may be allowed. In *In re UNR Industries, Inc.*, 736 F.2d 1136 (7th Cir. 1984), the seventh circuit addressed a related issue—whether members of a statutory committee's litigation expenses are reimbursable under section 330 of the Code. The court held that the litigation expenses undertaken by two members of the committee could not be reimbursed under section 330, which deals with compensation and reimbursement for professional persons employed by the committee as a whole. The court found that the two members of the committee, who had employed their own attorneys and incurred discovery expenses, were not acting on behalf of the committee as a whole, and therefore denied their application for reimbursement of their expenses. *Id.* at 1141. The court expressly disavowed any discussion of section 503(b) of the Code. *Id.* at 1139.

### A.

Faced with the Code's silence concerning the payment of a statutory committee's administrative expenses, which seems inconsistent with the greater role given to creditors' committees under the Code, many bankruptcy courts have relied on the legislative history of section 503(b) to argue that Congress intended to continue the prior law under the Act, which permitted reimbursement. *In re J.E. Jennings, Inc.*, 96 B.R. 500, 504 (E.D.Pa.1989) ("the legislative history of Section 503 also fails to suggest that Congress intended to change the policy of reimbursement which existed before the Code's enactment"); *In re Aviation Technical Support, Inc.*, 72 B.R. 32, 34 (Bankr.W.D.Texas 1987) ("the [legislative] history is clear: such expenses were considered as allowable claims"); *In re General Oil Distrib., Inc.*, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985) ("If anything, differ-

ences between the Act and the Code would suggest that Congress intended the practice to continue under the Code, and that perhaps the practice is essential to maintaining the scheme envisioned by the Code.")

A brief review of the legislative history is necessary to sum up the arguments of these courts. With the promulgation of the new bankruptcy rules in 1983, Rule 2016 became effective. Rule 2016(a) sets forth the procedure for obtaining court approval of requests for compensation and reimbursement of expenses under section 330. The Advisory Committee Note to Rule 2016(a) states that "subdivision (a) includes within its provisions a *committee*" (emphasis added). Three courts have held that expenses incurred by a statutory committee may be reimbursed, if shown to be actual and necessary, in light of Rule 2016(a) and the Advisory Committee Note. *In re Toy & Sports Warehouse, Inc.*, 38 B.R. 646, 648 (Bankr.S.D.N.Y.1984); *In re Malden Mills, Inc.*, 42 B.R. 476, 488 (Bankr.D.Mass.1984); *In re GHR Energy Corp.*, 35 B.R. 539, 542 (Bankr.D.Mass. 1983). In these cases, reimbursement was allowed as supportive of the policy of encouraging active committee participation in the reorganization process. However, as the seventh circuit in *In re UNR Industries* pointed out, the Advisory Note indicates that Rule 2016(a) merely sets forth the requirements for making an application for reimbursement of expenses under section 330. 736 F.2d at 1139. Section 330 provides no substantive basis for reimbursement to the members of an official creditors' committee, but only for the compensation of professionals employed by the committee. "Thus, because the substantive basis for reimbursement does not appear in § 330, the procedural rule may not properly be relied on to provide such a basis." *Id.* We agree with the seventh circuit in *UNR Industries* that Bankruptcy Rule 2016(a) does not provide authority for reimbursement of administrative expenses to an official creditors' committee.

Other courts have relied upon proposed amendments to the Code in holding that Congress intended that a statutory commit-

tee's expenses should be paid. *In re Windsor Comm. Group, Inc.*, 54 B.R. 504, 507 (Bankr.E.D.Pa.1985); *In re Labine*, 42 B.R. 883, 887 (Bankr.E.D.Mich.1984). In 1981, Congress attempted to enact the Technical Amendments Act of 1981. The Senate bill would have amended 11 U.S.C. § 503(b), which does not include a provision for the reimbursement of a section 1102 committee, by changing the period at the end of the final paragraph (6) to a semi-colon and adding thereafter the word "and." A new final paragraph (paragraph (7)) was to be added after the "and," stating:

> (7) The actual, necessary expenses, other than compensation and reimbursement specified in paragraph (2) of this subsection, incurred by a committee appointed under section 1102 of this title.

The proposed amendment thus would have provided explicit authority for the reimbursement of a statutory committee's administrative expenses. The House Report on the proposed Technical Amendments Act stated that it "adds a new paragraph providing for administrative expense treatment of expenses incurred by individuals in connection with their official responsibilities as members of a creditors' committee." H.R.Rep. No. 1195, 96th Cong.2d Sess. 13 (1980). The Senate Report stated that the amendment "makes technical corrections to make clear that the expenses of a creditors' committee in a reorganization case are allowable as administrative expenses." S.Rep. No. 150, 97th Cong. 1st Sess. 13 (1980). However, due to other considerations upon which Congress was unable to agree, no statutory amendments were enacted in 1981.

In July 1984, Congress apparently attempted to amend § 503(b), but failed to do so. On July 10, 1984, the President signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353. Section 446(7) of the Act states: "Section 503(b) of title 11 of the United States Code is amended ... in paragraph (6), by striking out the period and inserting in lieu thereof ';; and.'" The court in *In re Labine*, 42 B.R. at 887, concluded that Congress meant to include paragraph (7),

which in prior versions of the proposed amendment had followed the "and." The *Labine* court held that because of this alleged omission, reimbursement should be allowed. However, in the most recent amendments to the Code, the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, section 283(g)(3) deletes the "and" and the ";" at the end of paragraph (6) of section 503(b). The meaningless dangling conjunction at the end of the final paragraph (6) was taken out, and no paragraph (7) was added.

One court has held that a basis for reimbursement can be found in an exchange between Senators Dole and DeConcini recorded in the Congressional Record on Friday, October 5, 1984. *In re Aviation Technical Support, Inc.*, 72 B.R. at 34. The exchange indicates that these two senators believed that administrative expenses were payable and should continue to be payable.

> Mr. DeCONCINI: On another matter, confusion has arisen concerning the payment of necessary expenses incurred by a creditors' committee appointed under section 1102. Although there is not a specific provision providing for this type of expense in the Code, this has long been the practice and the obvious equitable thing to do. Would you agree that this type of expense should be paid and that nothing in the recently enacted Bankruptcy Amendments and Federal Judgeship Act would suggest a different construction?
>
> Mr. DOLE: I absolutely agree. It is essential for the orderly and professional administration of bankruptcy cases, that creditors and creditors' committees that incur reasonable and necessary expenses in their service on creditors' committees be reimbursed. Nothing in BAFJA was meant to change the well-settled practice of paying necessary expenses of creditors while serving on creditors' committees.

130 Cong.Rec. § 13771 (daily ed. Oct. 5, 1984). However, as the court in *In re Global Int'l Airways Corp.*, 45 B.R. 258, 261 (Bankr.W.D.Mo.1984) correctly pointed out, "[t]his exchange ... does not resolve the problem because ... [the] problem about paying these expenses did not arise with the 1984 amendments; it came into being with the enactment of the Bankruptcy Reform Act (the Code) and was compounded by adoption of the new rules[,]" which did not include a provision for the payment of a statutory committee's administrative expenses.

The legislative history thus indicates that on at least three occasions Congress has had the opportunity to explicitly grant the bankruptcy courts the authority to allow for the reimbursement of administrative expenses to an official committee of unsecured creditors, but has failed to do so. However, the repeated attempts to amend section 503(b) and the floor debate indicate that this omission was an oversight and is contrary to Congressional intent.

### B.

The only explicit reference in the Code concerning reimbursement of creditors' committees is found in section 503(b)(3)(D), which states that a bankruptcy court may allow as an administrative expense the actual, necessary expenses of "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders *other than a committee appointed under Section 1102 of this title*, in making a substantial contribution in a case under Chapter 9 or 11 of this title...." (emphasis added).

Some courts have read the italicized phrase as words of prohibition, which state emphatically that reimbursement of the administrative expenses of an official committee is not allowed. *In re Air Haiti*, 46 B.R. 539, 541 (Bankr.S.D.Fla.1985); *In re Lyons Mach. Co., Inc.*, 28 B.R. 600, 602 (Bankr.E.D.Ark.1983); *In re Grynberg*, 19 B.R. 621, 622 (Bankr.D.Colo.1982). This conclusion is reached by reading § 503(b)(3)(D) to mean that the actual and necessary expenses of a creditor, an indenture trustee, or an unofficial committee representing creditors or equity security holders may be allowed as administrative expenses if a substantial contribution is

made, but the actual and necessary expenses of a committee appointed under § 1102 may not be allowed.

Other courts have concluded that these "are not words of prohibition but simply part of the definition of an unofficial committee." *In re GHR Energy Corp.*, 35 B.R. at 541; *Accord In re J.E. Jennings, Inc.*, 96 B.R. at 501; *In re Aviation Technical Support Inc.*, 72 B.R. at 34; *In re Malden Mills, Inc.*, 42 B.R. at 488.

The court in *In re Global Int'l Airways Corp.* reasoned:

> The provisions of Section 503(b)(3)(D) ... fall into place as language enlarging those parties who may be reimbursed if they make a "substantial contribution in a case under chapter ... 11." There is nothing in Section 503(b)(3)(D) that compels the reading that it bars reimbursement to appointed committees. Rather this reading establishes a two tier test: one for official committees and another for volunteer committees in terms of qualifying for reimbursement. An official committee is reimbursed if it performs its statutory duties. A volunteer committee is reimbursed if it makes a substantial contribution.

45 B.R. at 261. The *Global* court concluded that section 503(b)(3)(D), instead of precluding reimbursement to statutory committees, merely establishes the tougher "substantial contribution" standard for reimbursement of nonstatutory committees. *Id.*

The court in *In re GHR Energy Corp.* held that the phrase "other than a committee appointed under § 1102" was "a longhand expression for a voluntary, unofficial committee." 35 B.R. at 541. The *GHR Energy* court found that its view of the language was supported by the form of the previously discussed Technical Amendments Act of 1981, which proposed to add a

new paragraph (paragraph (7)) authorizing reimbursement to statutory committees, rather than deleting the exclusionary phrase "other than a committee appointed under § 1102" found in paragraph (3) of 503(b). The court reasoned that if the phrase in paragraph (3) were intended to prohibit reimbursement of a section 1102 committee's expenses, the technical amendment simply would have deleted the exclusionary words in paragraph (3). *Id.*

We agree and find that the phrase at issue in § 503(b)(3)(D) was meant to include a class not otherwise formerly deemed to be entitled to reimbursement; in other words, the phrase was meant to define an unofficial committee rather than to exclude an official committee. The notes of the Committee on the Judiciary, Senate Report No. 95–989, indicate that the words "other than a committee appointed under § 1102" modify the preceding phrase, "a committee representing creditors," rather than the word "creditor" at the beginning of the sentence. We, therefore, do not believe we are precluded from authorizing reimbursement of the administrative expenses of an official creditors' committee by the wording of 503(b)(3)(D).[3]

## C.

The majority of bankruptcy courts have found authority in the Code for the reimbursement of an official committee's administrative expenses in section 503(b) or section 503(b)(1)(A), which state:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including ---
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commis-

---

**3.** Some courts have stayed within the confines of 503(b)(3)(D) and held that an individual member of an official creditors' committee, who establishes that he has made a substantial contribution to the reorganization, may be reimbursed as a "creditor" making a substantial contribution. *In re Lyons Mach. Co., Inc.*, 28 B.R. at 601; *In re Grynberg*, 19 B.R. at 623–24; *In re*

*Farm Bureau Services, Inc.*, 32 B.R. 69, 71 (E.D. Mich.1982); *but see In re Major Dynamics, Inc.*, 16 B.R. 279, 280 (Bankr.S.D.Cal.1981) ("It would indeed be anomolous to allow individuals on a committee to recover costs out of the estate when the Code does not provide such reimbursement to the creditors' committee itself.")

sions for services rendered after the commencement of the case;

Many courts have held that this section should be construed broadly in order to provide reimbursement to official creditors' committees, because reimbursement is necessary to effectuate the policies underlying the statutory scheme for reorganization found in the Code. *In re J.E. Jennings, Inc.*, 96 B.R. at 502–03; *In re Evans Prod. Co.*, 62 B.R. 579, 583 (S.D.Fla.1986); *In re Kaiser Steel Corp.*, 74 B.R. 885, 889 (Bankr.D.Colo.1987); *In re Aviation Technical Support, Inc.*, 72 B.R. at 34; *In re Northeast Dairy Coop. Federation, Inc.*, 76 B.R. 914, 916 (Bankr.N.D.N.Y.1987); *In re White Motor Credit Corp.*, 50 B.R. 885, 892 (Bankr.N.D.Ohio 1985); *In re Global Int'l Airways Corp.*, 45 B.R. at 261; *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443, 446 (Bankr.E.D.Cal.1982).

Courts that have found authority to reimburse an official creditors' committee under these sections fall into two groups. Under the first line of cases, the reasoning is as follows. Section 503(b) is not comprehensive and exclusive. The items of reimbursable expenses expressly recognized in the section are described following the word "including." As stated in section 102(3) of the Code, "including" is not a word of limitation. Consequently, the omission from the list of a statutory committee's expenses does not mean that they cannot be allowed. *In re White Motor Credit Corp.*, 50 B.R. at 892; *In re Labine*, 42 B.R. at 888; *In re Ridgewood Sacramento, Inc.*, 20 B.R. at 446; *In re Fireside Office Supply, Inc.*, 17 B.R. 43, 45 (Bankr.D. Minn.1981).

The second line of cases presume that the statutory duties imposed on an official unsecured creditors' committee by section 1103 are essential to the "preservation of the estate" within the meaning of 503(b)(1)(A) and authorize reimbursement on this basis. *In re J.E. Jennings, Inc.*, 96 B.R. at 504; *In re Evans Products Co.*, 62 B.R. at 583; *In re Kaiser Steel Corp.*, 74 B.R. at 889; *In re Global Int'l Airways Corp.*, 45 B.R. at 261.

Courts which uphold an expansive reading of Sections 503(b) and 503(b)(1)(A) maintain that the reimbursement of official creditors' committees' administrative expenses is necessary to promote their cooperation and participation in the reorganization process—an underlying design of the Code.

> [U]nder the scheme adopted by the Bankruptcy Reform Act of 1978, i.e., with the bankruptcy judge removed from active participation in the case and the preference for leaving the debtor in possession, a § 1102 committee has a more important role in terms of monitoring the debtor's business life and developing the terms of the plan of reorganization. [The court does] not believe that it is sensible to conclude that Congress mandated a more critical role for official committees and at the same time chose to change the existing rule and bar members from obtaining reimbursement for the expenses incurred in performing their duties.

*In re GHR Energy Corp.*, 35 B.R. at 543. *See also In re Kaiser Steel Corp.*, 74 B.R. at 890 ("the committee's role can be wholly impaired if creditors, already financially injured by the debtor's inability to pay, must personally finance the expenses which are necessary to active participation"); *In re Toy and Sports Warehouse, Inc.*, 38 B.R. at 648 ("participation by individual creditors as members of an official creditors' committee should not be chilled by requiring them to finance their travel and out of pocket expenses incurred in attending official creditors' committee meetings").

Other courts have found that logic and equity, as well as policy considerations, support their interpretation of the Code. The court in *In re J.E. Jennings, Inc.* stated:

> The more restrictive reading of Section 503(b)(3)(D) creates the anomalous situation in which creditors' committees which are appointed by and assist the bankruptcy court—no matter how much they contribute to the case—cannot be reimbursed for their expenses, while "unofficial" ("unappointed") committees who make a substantial contribution to the

case can be reimbursed.... "The effect of such an inconsistency would be to promote a shift away from the nonreimbursable statutory committee to the fully recoverable voluntary committee, thereby rendering meaningless almost the entire statutory mechanism which Congress explicitly provided for in Chapter 11 cases."

96 B.R. at 502 (citation omitted) (quoting *In re General Oil Distr., Inc.*, 51 B.R. at 805). *Accord In re Northeast Dairy Coop. Federation, Inc.*, 76 B.R. at 916. The rationale underlying these cases is that the court must reconsider a statute that could result in the undermining of active creditor involvement in a chapter 11 case and that reimbursement is needed to foster committee participation in reorganization.

The Securities and Exchange Commission pointed out in its memorandum in support of the petition for rehearing that an official committee of shareholders may be appointed pursuant to Section 1102(a)(2) of the Code to ensure adequate representation of equity security holders and that failure to reimburse administrative expenses of official committees in general would jeopardize their role in the reorganization process. The SEC has stated:

> The official committee concept in Chapter 11 is an essential element in the Congressional redesign of the reorganization process. The new statute [the Bankruptcy Code] shifts the emphasis in reorganization from formal procedures and court supervision found in former Chapter X [of the Bankruptcy Act] to a system premised on arriving at an acceptable plan by active participation of all parties in interest through negotiation. The new Chapter 11 reflected Congress' view that public security holders could be adequately protected by assuring that adequate information was disclosed to them at the time their votes were solicited for acceptance of a plan and by providing an opportunity to participate in the reorga-

nization in a formal capacity through the committee process.

Brief of amici curiae, appendix B at 9.[4]

We believe that the decision as to what participants in the bankruptcy process may receive compensation from the estate lies in the hands of Congress. Although we fail to find express authority for the reimbursement of an official committee's administrative expenses in the Code, we believe it is implied in the overall scheme for reorganization and in the legislative history of the Code and its amendments. We, therefore, will allow the reimbursement of administrative expenses to appellant—the official creditors' committee of The George Worthington Co. We vacate our former opinion of September 12, 1990 and replace the original disposition with the present opinion. The decision of the district court to deny appellant's final application and to refuse to reconsider its denial of appellant's interlocutory application for the reimbursement of administrative expenses is hereby reversed and the case is remanded to the district court for proceedings consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, concurring.

I agree with the majority that the official creditors' committee should be reimbursed for its administrative expenses. I further agree with the majority that the official creditors' committee can legally be reimbursed and that "the decision as to what participants ... may receive compensation lies in the hands of Congress."

I write separately to emphasize the judicial duty to act under circumstances such as these where Congress fails to explicitly allow or disallow a specific compensation. The intent of Congress with respect to the plain meaning of the word "including" in section 503(b)(1)(A) is clearly discernible by simply looking to the long standing practice of reimbursing expenses under the old Bankruptcy Act and the floor debate suggesting that the reimbursement continue.

---

**4.** *This issue was not previously raised before the* panel in the present case. Although the SEC had the authority to participate in the appeal of the present case pursuant to section 1109(a) of the Code, it did not do so.

As it is the regular business of courts to interpret legislative enactments by looking to the history and congressional intent behind each legislative scheme, I concur in the majority opinion's conclusion that authorization for reimbursement under section 503(b)(1)(A) "is implied in the overall scheme for reorganization and in the legislative history of the code and its amendments."