**In re COLORADO–UTE ELECTRIC ASSOCIATION, INC., Debtor(s).**

**Bankruptcy No. 90 B 03761 C.**

United States Bankruptcy Court, D. Colorado.

Jan. 14, 1991.

James L. Huemoeller, Denver, Colo., for Colorado–UTE Elec. Ass'n, Inc.

Darrell G. Waas, Denver, Colo., for National Rural Utilities Co-op Finance Corp.

## ORDER ON AMENDED FIRST APPLICATION FOR INTERIM EXPENSE REIMBURSEMENT OF THE OFFICIAL UNSECURED CREDITORS' COMMITTEE

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court on the Amended First Application for Interim Expense Reimbursement of the Official Unsecured Creditors' Committee (the Amended Application). National Rural Utilities Cooperative Finance Corporation (CFC) has objected to the Amended Application.

The debtor filed a voluntary petition for reorganization pursuant to chapter 11 of the Bankruptcy Code on March 30, 1990. The Official Unsecured Creditors' Committee (the Committee) was formed by the United States Trustee on April 12, 1990. By the Amended Application, the Committee requests reimbursement of expenses totaling $23,503.89 which were incurred from April 12, 1990 through September 18,

1990.[1] The Committee requests the following amounts for each of its members:

| Member | Amount |
| --- | --- |
| United Bank of Denver | $ 2,486.02 |
| Norwest Bank Minnesota, N.A. | 8,853.24[2] |
| Methodist Hospitals of Dallas | 7,960.47[3] |
| Peabody Coal Co. (Flagstaff, Az.) | 1,465.22 |
| Colowyo Coal Company | 2,738.94 |
| | $23,503.89 |

■ CFC objects to the reimbursement of any expenses to the Committee. CFC relies on the holding in a recent case out of the 6th Circuit, *In re George Worthington Co.*, 913 F.2d 316 (6th Cir.1990), which denied such a request as beyond the scope of the Bankruptcy Code. Although the 6th Circuit subsequently vacated the Order, *In re Worthington Co.*, 921 F.2d 626, (6th Cir.1990), CFC argues the persuasiveness of the Circuit Court's original analysis. This Court is not persuaded by the reasoning of the vacated 6th Circuit opinion and will continue to adhere to the holding of Judge Matheson in *In re Kaiser Steel Corp.*, 74 B.R. 885 (Bankr.D.Colo.1987) which represents the majority view on this issue. The input of the Committee "into the reorganization process is critical, but their continued participation as individuals can place an enormous financial burden on them if their reasonable travel and maintenance expenses incurred in performing their duties cannot be reimbursed out of the estate." *Id.* at 890.

■ Turning now to the expenses of the Committee members, United Bank of Denver requests $600.87 for four catered lunches served at Committee meetings. United Bank of Denver submits that each of the lunches served approximately 20 people and allowed the members and others in attendance to work through lunch and avoid overnight stays in Denver. The aim of avoiding the necessity of overnight stays was not always met,[4] but the cost per per-

1. The Committee originally requested reimbursement of $25,121.67 in expenses. A hearing was held on the matter at which time the Committee was instructed to submit a revised request. The Amended Application was filed in response to the Court's Order.

2. Represents a reduction of $1,611.78 from the amount originally requested.

3. Represents a reduction of $6 from the amount originally requested.

4. Both Colowyo and Norwest stayed overnight for the April 12, 1990 meeting. Colowyo stayed overnight for the April 19, 1990 meeting. Both Peabody and Norwest stayed overnight for the June 12, 1990 meeting. Norwest stayed overnight for the July 24, 1990 meeting. Methodist

son of each lunch (approximately $7.50) appears to be reasonable. The Court will allow this expense.

 United Bank of Denver also requests reimbursement for either Mr. Bills or Mr. Sall to attend certain meetings. Mr. Bills' reports are missing receipts for $20 in parking charges, $10.50 in meals, and $12 in taxi fare. These undocumented amounts cannot be reimbursed from estate funds. Mr. Sall attended a meeting in Washington, D.C., with CFC and REA in June, 1990. Mr. Sall flew first class on the return trip but waitlisted for coach because apparently no coach seats were available. The Court will permit this expense given the explanation. Mr. Sall's receipt for his lodging at the Canterbury Hotel while in Washington, D.C., has been copied in such a manner that the itemization of individual charges is concealed. As the total charge of $138.14 appears to be consistent with rates in the Washington, D.C., area, the expense will be allowed. United Bank of Denver is allowed $2,443.52 as reimbursement of expenses.

 Norwest Bank of Minnesota requests reimbursement for expenses associated with attendance at Committee meetings. Both Mr. Ruehle and Ms. Hefte, in-house counsel, attended some meetings. The expense request covers expenses related to the attendance of only one person at these meetings. Mr. Ruehle was the primary representative. Norwest Bank requests reimbursement of Ms. Hefte's expenses only for those occasions where she was the only representative from Norwest Bank in attendance. Mr. Ruehle's expenses consist primarily of round-trip coach airfare from Minneapolis. Of the eight round-trip flights, only three necessitated an overnight stay. Mr. Ruehle requests a total of $67.76 for phone charges at the hotel but does not indicate the nature of these calls. Without more explanation, the phone charge cannot be allowed. On May 7 and 8, 1990, Mr. Ruehle requests $37 in taxi fare when the receipts total $27. Mr. Ruehle is only entitled to the $27 actually expended. Some $70.31 is requested for a

"Dinner conference at the Trinity Grille after Creditors' Committee meeting." No indication is made as to who attended this conference. Without more, this expense cannot be allowed. Finally, Mr. Ruehle requests $710 for his August 7, 1990 flight. The receipts indicate that the actual fare cost was $668 and that an additional $42 was spent on some sort of an upgrade. The Court will allow only the base fare of $668.

Ms. Hefte has a $1 phone charge on her hotel bill which similarly lacks further explanation and cannot be allowed. Further, Ms. Hefte requests $23 in taxi fare for August 27–28, 1990 but has a receipt for only $11. The remaining $12 cannot be allowed. Norwest Bank Minnesota, N.A., will be allowed $8,650.17 in expense reimbursement.

Methodist Hospitals of Dallas requests reimbursement for sending Mr. Schaefer to Committee meetings. Mr. Schaefer had twelve round-trip flights from Dallas but only stayed overnight once. Frequently, at least one leg of Mr. Schaefer's flights was flown on an economy fare. Mr. Schaefer requests $24.99 in phone charges resulting from his one-night stay in Denver. Without any further explanation, the phone charges cannot be allowed. Similarly, $25 is requested for "Airport conference room rental" without further explanation. This charge must also be disallowed. Methodist Hospitals of Dallas will be allowed $7,910.48 as reimbursement for expenses.

Peabody Coal Co. owns its own aircraft for which it normally bills $1,900/hour. In lieu of that amount, Peabody has billed the standard coach class air fare. Mr. Grow's meal expenses of $71.93 are unreceipted and cannot be allowed. Peabody Coal Co. will be allowed $1,393.29 in expense reimbursement.

Finally, Colowyo Coal Company sent Mr. Usilton to Committee meetings. Mr. Usilton's lodging receipts frequently contain meal expenses which are not separately accounted for on the expense report. As they are receipted, these meal expenses

Hospital, however, never stayed overnight when lunch was served at a meeting.

will be allowed. The lodging receipts, however, also contain a $7.50 fee for the hotel fitness center and $5.55 in unexplained phone charges which cannot be allowed. The April 18, 1990 receipt for parking shows a $2 charge instead of the $2.50 charge reported. The extra $.50 was not incurred and cannot be recovered. Further, there are no receipts for $468 in airfare and $4.75 in meals. These expenses will not be allowed. Colowyo Coal Company will be allowed $2,252.64 in expense reimbursement.

To summarize, expense reimbursement is allowed as follows:

| Member | Amount |
| --- | --- |
| United Bank of Denver | $ 2,443.52 |
| Norwest Bank Minnesota, N.A. | 8,650.17 |
| Methodist Hospitals of Dallas | 7,910.48 |
| Peabody Coal Co. (Flagstaff, Az.) | 1,393.29 |
| Colowyo Coal Company | 2,252.64 |
| | $22,650.10 |

Although the Court has allowed most of the requested expenses, the members of the Committee are strongly urged to utilize telephone conference calls instead of in-person meetings where appropriate. At those times when in-person meetings are necessary, the Committee is cautioned that such meetings should be scheduled far enough in advance to allow the members to take advantage of economy and not coach fares when possible.

Accordingly, it is hereby

ORDERED that the Official Unsecured Creditors' Committee is allowed $22,650.10 as reimbursement of expenses for the period April 12, 1990 through September 18, 1990; and it is

FURTHER ORDERED that all amounts allowed by this Order are subject to final review and possible recapture.