**In re ATTORNEYS OFFICE MANAGEMENT, INC., Debtor.**

**In re Paul F. FEGEN, Debtor.**

**Bankruptcy Nos. LA 82–20633–CA, LA 83–00075–CA.**

United States Bankruptcy Court, C.D. California.

June 1, 1984.

David A. Gill, John J. Bingham, Danning, Gill, Gould, Joseph & Diamond, Los Angeles, Cal., for Attorneys Office Management, Inc.

David Levene, Los Angeles, Cal., for debtor Paul Fegen.

Eugene C. Gratz, Gratz & Starler, Los Angeles, Cal., for Subtenants Class Creditors Committee.

James J. Feder, Robert B. Orgel, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for Official Creditors Committee.

H. Miles Raskoff, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for Credit Managers Association of Southern California.

MEMORANDUM OF DECISION

CALVIN K. ASHLAND, Bankruptcy Judge.

BACKGROUND

Credit Managers Association of Southern California (CMA) was employed by the offi-

cial creditors committee as its secretary. The order authorizing employment made the employment effective December 9, 1982. At the time the application was filed the United States Trustee and CMA had agreed to litigate the issue of whether CMA could be secretary and at the same time perform services for individual creditors. They have agreed that the decision in this case will govern the participation of CMA in future bankruptcy cases.

## ISSUE

The issue as defined by the United States Trustee is: can CMA act as secretary to the official creditors committee while concurrently performing services for individual creditors? In reality the United States Trustee objects to CMA's alleged practice of using its position as the duly appointed secretary to the official creditors committee to solicit individual creditors to use its services.

The issue as defined by CMA is: whether Bankruptcy Code Section 1103(b) applies to a secretary of an official creditors committee? Does CMA, as secretary, represent the creditors committee?

CMA may continue as secretary. Bankruptcy Code Section 1103(b) does not apply.

## FACTS

CMA is a non-profit corporation that provides credit reporting and debt collection services for more than 3,600 members. It maintains an adjustment bureau that is available to debtors and creditors with reference to out of court debt adjustment such as extension agreements, composition agreements, and assignments for the benefit of creditors. Sometimes a workout procedure is less formal than any of these three.

The following description of services available to distressed debtors is taken from a brochure describing the adjustment bureau of CMA (Exhibit 2):

The Adjustment Bureau was devised by businessmen to supervise the affairs of debtors in difficulty, to rehabilitate if possible, to liquidate when necessary in an economical and businesslike manner. Case administrations are controlled through a creditors' committee elected by the creditors.

The services of the Adjustment Bureau are made available to distressed debtors through the following methods:

1. The debtor may come to the Adjustment Bureau voluntarily with his problem and seek assistance.

2. The debtor may first discuss his financial problem with his attorney or accountant, who may then bring the debtor to the Adjustment Bureau.

3. The debtor may discuss his problem with his major creditor, who is a member of the Credit Managers Association of Southern California, and the creditor may refer the matter to the Adjustment Bureau.

4. A member of the Credit Managers Association of Southern California may ask the Adjustment Bureau to contact a debtor-customer who is known to be in financial difficulty for the purpose of calling a meeting of creditors.

The facilities of the Adjustment Bureau are available without charge, for the calling of a creditors' meeting to discuss the financial problems of the debtor. If the creditors' meeting results in an administration which is handled by the Adjustment Bureau, a fee is charged for this service. The amount of the administration fee is very reasonable and is based on a sliding scale; the percentage figure decreases in the larger estates. The administration fee is normally paid by the debtor in Extension or Compromise Settlement arrangements. In General Assignment cases, the fee is paid out of the proceeds of the liquidation.

In this case the services to be rendered by CMA as secretary to the creditors committee include the following: attendance at all meetings of the committee; preparation and distribution of minutes of all meetings of the committee; distribution of pleadings and other materials to members of the committee, their counsel, and other interested

parties as requested by the committee or its counsel; and such other special services as may be requested from time to time by the committee or its counsel.

During the course of the Chapter 11 case CMA will request creditors to consider using the services of CMA for the purpose of filing proofs of claim, providing written reports, and paying over any distribution to creditors. For these services CMA would receive a fee from the creditors electing to use the services. This fee would be 5 percent for creditors that are members of the CMA and 10 percent for creditors that are not members. The official creditors committee does not object to this course of conduct by CMA.

CMA expects and the committee agrees that CMA will request compensation for acting as secretary to the committee and will ask reimbursement for its out-of-pocket costs incurred while acting as secretary to the committee. In addition, CMA will receive a fee from the creditors which use its services for the purpose of filing proofs of claim.

## DISCUSSION

The United States Trustee is critical of the practice of CMA filing proofs of claim for creditors. While I will make no comment on the need for a creditor to have another entity file a proof of claim for it there is value in the service performed by CMA. It is true that Bankruptcy Code Section 1111(a) provides that proofs of claim or interest are deemed filed unless the claim or interest is scheduled as disputed, contingent, or unliquidated. In order to be safe the creditor must know how the debtor has scheduled its claim. It is a time consuming process for the creditor to ascertain that information. To avoid that aggravation and to be safe a creditor simply files a proof of claim without regard to how its debt has been scheduled by the debtor. I imagine that every lecturer in a basic course on bankruptcy includes the foregoing in any instruction given as to the requirement for filing proofs of claim in Chapter 11 cases.

The Trustee points to Bulletin No. 1 (Exhibit 5) sent by CMA to creditors of the debtor as an example of a repugnant practice of CMA. In this bulletin CMA offers to file claims on behalf of members and non-members. CMA itself regards the so-called solicitation as an invitation for a creditor to have CMA file a claim. To the extent that CMA sends this bulletin in the performance of its services for the creditors committee the practice is repugnant. To the extent that it sends the bulletin in the performance of services as an adjustment bureau it is not.

The services of CMA as an adjustment bureau before and after the filing of a bankruptcy are distinct from the services of CMA as the secretary for the official creditors committee. As an adjustment bureau it provides information concerning the status of a workout to creditors. It continues providing information after a bankruptcy case has been filed. Ideally, it furnishes simple, thorough reports often enough to inform creditors without the need for any creditor to ask for information. CMA as an adjustment bureau might provide this information in Chapter 7 cases and in business Chapter 13 cases also. Its role as secretary to an official creditors committee would have no bearing on this service. Accordingly, for doing so, it should not seek or receive any compensation from the bankruptcy case.

The duties of CMA as the secretary to the official creditors committee in this case have already been described. It may furnish a place for the committee meetings, organize the meetings, and act as a scribe to keep and send the minutes and reports of the committee as requested. If it is requested to send reports to creditors then this function should be performed for the benefit of all creditors of the bankruptcy estate and not especially for creditors for whom CMA has filed proofs of claim. In a Chapter 11 the committee might seek acceptance or rejection of a plan. The secretary of a committee might assist in this function.

Some functions performed by CMA are unique to Southern California. The United States Trustee urges that he is informed by the United States Trustees in some of the nine other pilot United States Trustee districts that employment of secretaries by official creditors committees is uncommon and that the use of an organization as secretary is virtually non-existent. CMA is the most involved of the various affiliates of the National Association of Credit Management in the bankruptcy process.

There is a view that secretaries to committees do not require any particular expertise. Under this view the taking of notes, the sending of notices, and the compiling of acceptances and rejections of a debtor's plan can easily be performed by any member of a creditors committee. In a large case a mailing service could mail the notices. Under Section 1102(b)(1) the committee of creditors should consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented by the committee. In any group of seven people it is hard to find one person willing to serve as secretary for the group. Assuming all seven to be able to do so they would still be pleased to have someone with more expertise perform the function instead. Perceivably, a creditor would be more willing to serve on a committee knowing that it would not be called upon to serve as the committee's secretary. It may be only an empirical observation but in this district creditor participation in the affairs of a distressed debtor is better both before and after a bankruptcy proceeding because of the involvement of CMA.

Bankruptcy Code Section 1103(a) permits an official creditors committee to select and authorize the employment of "attorneys, accountants, or other agents, to represent or perform services for such committee." Section 1103(b) provides that a person employed to represent a committee "may not, while employed by such committee, represent any other entity in connection with the case." Section 1103(b) does not apply to CMA because it does not represent the committee. CMA performs services for the committee. Section 1103(b) was primarily intended to require the counsel for the committee to cease representation of any other entity in connection with the case after beginning to represent the committee. It was intended to prevent the potential for severe conflicts of interest of counsel. House Report No. 95–595, 95th Cong., 1st Sess. 402 (1977) U.S.Code Cong. & Admin. News 1978, pp. 5787, 5963, 6357.

Rule 2014 of the Federal Rules of Bankruptcy Procedure does not compel the conclusion that Section 1103(b) applies to CMA. The rule merely requires that a person employed pursuant to Section 1103 disclose any connection with a party in interest in the bankruptcy case. It does not prohibit the employment of persons having a connection with a party in interest.

The United States Trustee asserts that CMA may not be employed because it may not be entitled to compensation under Section 328(c). It asserts that CMA is a creditor within the meaning of Section 101(9) and thus is not disinterested within the meaning of Section 101(13)(E). It asserts that CMA is a creditor because CMA will participate in any distribution made to those creditors for whom it filed claims.

The prohibition in Section 328(c) is a permissive not mandatory sanction for lack of disinterestedness.

Under Section 101(9) a creditor is a holder of a claim against the debtor. CMA only has a prospective right of payment against the holder of a claim payable upon payment of money to the creditor from the estate. CMA has no right of payment from the debtor and, therefore, is not a creditor of the debtor.

## CONCLUSION

The Credit Managers Association of Southern California performs a bifurcated function in performing services for creditors both of whom are members and not members of CMA and performing services as the secretary to the official creditors committee. It is not employed to represent the committee under Section 1103(b). CMA

is not barred from such employment by Section 328(c).

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered.