**In re J.E. JENNINGS, INC., d/b/a Kids Point of View, Debtor.**

**Civ. A. No. 86–7303.**

United States District Court, E.D. Pennsylvania.

Feb. 13, 1989.

Kenneth F. Carobus, Philadelphia, Pa., for Creditors' Committee, appellants.

Erwin L. Pincus, Philadelphia, Pa., for debtor.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This is an appeal from the final order of the bankruptcy court denying the applications of Health–Tex, Inc., Calabash Fashions, Tulip Tops, and Blue Bell, Inc.—members of a creditors' committee appointed pursuant to 11 U.S.C. [section] 1102 (hereinafter "official committee") for reimbursement of expenses—as well as the application of Albert Vogel, Secretary of the official committee, for compensation and reimbursement of expenses. *In re J.E. Jennings, Inc., d/b/a Kids Point of View*, 67 B.R. 106 (Bankr.E.D.Pa.1986). The bankruptcy court concluded that the Code did not authorize the reimbursement of expenses incurred by official committees or their members; nor did it authorize the compensation of committee secretaries. Because the purported authority to order such compensation and reimbursement comes from 11 U.S.C. [section] 503, the issue presented is whether Section 503 permits a bankruptcy court to allow, as administrative expenses, the actual and necessary costs associated with the activities of an official committee and its secretary.

Courts considering this issue have reached several different conclusions. The bankruptcy court in this case and the other courts denying reimbursement or compensation strictly read the language of Section 503(b)(3)(D):

After notice and a hearing, there shall be allowed administrative expenses ... including ... the actual, necessary ex-

penses, other than compensation and reimbursement specific in paragraph (4) of this subsection, incurred by ... a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders *other than a committee appointed under section 1102 of this title,* in making a substantial contribution in a case under chapter 9 or 11 of this title ...

[Emphasis added]. These courts have concluded that Section 503(b)(3)(D) evinces a Congressional intent to preclude reimbursement of expenses incurred by official committees (or their members). *See e.g., In Re Windsor Communications Group, Inc.,* 54 B.R. 504 (Bankr.E.D.Pa.1985)[1]; *In re Air Haiti,* 46 B.R. 539 (Bankr.S.D.Fla. 1985); *In re Interstate Restaurant Systems, Inc.,* 30 B.R. 32 (Bankr.S.D.Fla.1983), reh'g denied, 32 B.R. 103 (Bankr.S.D.Fla. 1983); *In re Lyons Machinery Co.,* 28 B.R. 600 (Bankr.E.D.Ark.1983); *In re Major Dynamics, Inc.,* 16 B.R. 279 (Bankr.S.D.Cal. 1981).

A clear majority of courts, however, have permitted reimbursement, although not all relying on the same rationale. For example, while some courts have focused on the legislative history, bankruptcy rules, or advisory committee notes, see e.g., *In re General Oil Distributors, Inc.* 51 B.R. 794 (Bankr.E.D.N.Y.1985); *In re Global International Airways Corp.,* 45 B.R. 258 (Bankr.W.D.Mo.1984); *In re Labine,* 42 B.R. 883 (Bankr.D.Mich.1984); *In re Toy and Sports Warehouse, Inc.,* 38 B.R. 646 (Bankr.S.D.N.Y.1984); *Matter of Pennsylvania Tire and Rubber Co.,* 25 B.R. 18 (Bankr.N.D.Ohio 1982); *In re Fireside Office Supply, Inc.,* 17 B.R. 43 (Bankr.D. Minn.1981); others have relied on then-pending—but ultimately unadopted—statutory amendments which would have allowed reimbursement of official committee expenses, see e.g., *In re .GHR Energy Corp.,* 35 B.R. 539, 541 (Bankr.D.Mass. 1983), *In re Malden Mills, Inc.,* 42 B.R. 476, 488 (Bankr.D.Mass.1984). Other courts have discovered a distinction made by Section 503 between committees per se and committee members, see e.g., *In re Farm Bureau Services, Inc.,* 32 B.R. 69 (Bankr.E.D.Mich.1982) and *In re Grynberg,* 19 B.R. 621 (Bankr.D.Colo.1982) (allowing reimbursement of committee members' expenses but not the expenses of committee itself); *General Oil,* 51 B.R. 794 (applying different standard to reimbursement requests made by committees and those made by individual creditors).

An analysis of the Bankruptcy Code language and Rules, as well as the many published opinions interpreting Section 503, persuades me that the bankruptcy court is authorized to allow the reimbursement of official committee expenses and compensation for the committee's secretary. Section 503(b)(3)(D) expands the authority of the bankruptcy court to pay back creditors for their efforts in benefiting the bankrupt estate. It does not undermine the general principle of reimbursement and compensation found in Section 503(b)(1)(A):

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ...

In other words, Section 503(b)(1)(A) gives the Bankruptcy Court authority to allow as

---

**1.** "[T]here was a distinction under the Act between two (2) types of creditor activities. A creditor was not entitled to be reimbursed from the estate for expenses incurred in the course of pursuing his claim against the estate. However, if a creditor's activities conferred a benefit upon the estate as a whole, then that creditor would be entitled to reimbursement of his expenses from the estate. We believe that this distinction is still viable under the Code. Under the present statute, service on a creditors' committee is a matter of choice. A creditor may accept or decline appointment to the committee. There is no express provision in the Code which states that a member of a committee shall be reimbursed for his expenses. We believe that, in most cases, creditors accept a position on the committee with the understanding that they must bear their own expenses. Until Congress amends title 11 to provide otherwise, we will not allow members of a creditors' committee to be reimbursed from estate funds without a showing of the benefit derived by the estate from their activities." *Windsor,* 54 B.R. at 510.

administrative expenses the "necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered" by official committees. Section 503(b)(3)(D), however, merely authorizes compensation and reimbursement of expenses for those unofficial players who make a "substantial contribution" in the case. Section 503(b)(3)(D) takes nothing away from Section (b)(1)(A); rather, it adds to it.

Other courts agree with this expansive reading of Section 503. For example, in *Global*, 45 B.R. at 261, the court concluded that

> the expenses of the committees appointed under Section 1102, if actually incurred and necessary to performance of committee duties, may be allowed as administrative expenses under 503(b)(1)(A). The statutory duties imposed upon the committee presume that such activities are essential to the preservation of the estate. In addition, the application for reimbursement is addressed to the sound discretion of the trial court so that abuse may be checked....

> [Section 503(b)(3)(D) should be read] as language enlarging those parties who may be reimbursed if they make a 'substantial contribution in a case under chapter ... 11.' There is nothing in Section 503(b)(3)(D) that compels the reading that it bars reimbursement to appointed committees. Rather this reading establishes a two tier test: one for official committees and another for volunteer committees in terms of qualifying for reimbursement. An official committee is reimbursed if it performs its statutory duties. A volunteer committee is reimbursed if it makes a substantial contribution.

2. Some courts have taken a middle road, permitting reimbursement of official committees that have made a "substantial contribution." See e.g., *Farm Bureau Services, supra,* 32 B.R. 69. But see, Collier Bankruptcy Compensation Guide [paragraph] 7.01 at 7–3 (1988):
> The courts that choose this argument tend to hold that 'includes' in its nonexclusive sense covers members of official as well as nonoffi-

*Id.* at 261. Accord, *In re Kaiser Steel Corp.,* 74 B.R. 885, 889 (Bankr.D.Colo. 1987).

Logic and equity, as well as public policy considerations, also support this interpretation of the Code. The more restrictive reading of Section 503(b)(3)(D) creates the anomalous situation in which creditors' committees which are appointed by and assist the bankruptcy court—no matter how much they contribute to the case—cannot be reimbursed for their expenses, while "unofficial" ("unappointed") committees who make a substantial contribution to the case can be reimbursed.[2]

> Even those courts that have interpreted paragraph (D) to exclude reimbursement for the statutory committee have indicated that logic and equity seem to demand a different result, and have therefore been unable to conjecture why Congress would have desired to permit recovery for nonstatutory committees but summarily deny recovery for committees appointed under section 1102. See, e.g., *In re Lyons Machinery, Co.,* 28 B.R. 600, 602 (Bankr.E.D.Ark.1983). The effect of such an inconsistency would be to promote a shift away from the nonreimbursable statutory committee to the fully recoverable voluntary committee, thereby rendering meaningless almost the entire statutory mechanism which Congress explicitly provided for in Chapter 11 cases. See *In re Major Dynamics, Inc.,* 16 B.R. 279, 280 (Bankr.S.D.Cal. 1981).

*General Oil,* 51 B.R. at 805. Accord, *In re Northeast Dairy Co-op Federation, Inc.,* 76 B.R. 914, 915 (Bankr.N.D.N.Y.1987) ("the Court does not believe that Congress ... intended to allow compensation to an 'unofficial' committee of creditors who substantially contribute to the case, yet deny compensation to the so-called official credi-

cial committees. The problem with this approach is that the judge invariably stretches beyond reasonable measure to find 'substantial benefits' to justify the allowance of expenses. The reader is left with the queasy feeling that the court has abused the concept of 'substantial contribution' to reach the heartfelt right result.

tors' committee ... whose powers and duties are specifically enumerated by statute").

An expansive reading of Section 503 also promotes cooperation and participation in the settlement process—an underlying design of the Code.

Manifestly, it is important that creditors be encouraged to participate in the reorganization process, since the Bankruptcy Code is so structured as to contemplate negotiations and give and take between the debtor and the creditors. It is in this context that knowledgeable creditors should take an active rule in determining the course that the reorganization case should take, including an investigation and examination into the conduct of the debtor's affairs and the negotiations necessary for the confirmation of the debtor's plan of reorganization. Such participation by individual creditors as members of an official creditors' committee should not be chilled by requiring them to finance their travel and out of pocket expenses incurred in attending official creditors' committee meetings. Such costs are properly necessary and part of the recoverable administrative expenses contemplated under the Bankruptcy Code and Rules.

*In re Toy and Sports Warehouse, Inc.*, 38 B.R. 646, 648 (Bankr.S.D.N.Y.1984). *See*

*also, GHR Energy Corp.*, 35 B.R. at 543 [3]; *Kaiser Steel Corp.*, 74 B.R. at 890.[4]

The Code envisions an important role for the creditors' committees. While individual creditors should, therefore, be encouraged to serve as committee members, the Code's plans require one such member to assume the time-consuming position of secretary. This fact alone might deter some interested creditors from becoming involved in the committee at all.

Under Section 1102(b)(1) the committee of creditors should consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented by the committee. In any group of seven people it is hard to find one person willing to serve as secretary for the group. Assuming all seven to be able to do so they would still be pleased to have someone with more expertise perform the function instead. Perceivably, a creditor would be more willing to serve on a committee knowing that it would not be called upon to serve as the committee's secretary.

*In re Attorneys Office Management*, 40 B.R. 127, 130 (Bankr.C.D.Cal.1984). Compensation and reimbursement of expenses would certainly encourage more creditors to get involved in the committee process. But see, *In re Kingsway Purchasing, Inc.*, 69 B.R. 713 (Bankr.E.D.Mich.1987).[5]

3. "Finally, under the scheme adopted by the Bankruptcy Reform Act of 1978, i.e., with the bankruptcy judge removed from active participation in the case and the preference for leaving the debtor in possession, a [section] 1102 committee has a more important role in terms of monitoring the debtor's business life and developing the terms of the plan of reorganization. I do not believe that it is sensible to conclude that Congress mandated a more critical role for official committees and at the same time chose to change the existing rule and bar members from obtaining reimbursement for the expenses incurred in performing their duties."

4. "As the Code is presently structured, an active and aggressive creditors' committee is essential to the reorganization process. Certainly, that fact is explicitly recognized in the Code's mandate that a committee 'shall' be appointed, but the committee's role can be wholly impaired if creditors, already financially injured by the debtor's inability to pay, must personally fi-

nance the expenses which are necessary to active participation...."

5. "[T]his Court rejects as speculative the suggestion in *In re Attorneys Office Management, Inc.* that it would be hard to find a person on the creditors' committee willing to serve as secretary for the group and that a creditor would be more willing to serve on a committee knowing that it would not be called upon to serve as the committee secretary.... Rather, this Court concludes that a creditor's motivation in participating in a debtor's reorganization, normally based upon the expectations of financial reward, will not be substantially diminished by the prospect of having to perform some administrative functions on the creditors' committee. Further, this Court cannot agree that there is any relationship between the employment of a secretary for the creditors' committee and the level of creditor participation in a case." *Kingsway Purchasing*, 69 B.R. at 716.

The legislative history of Section 503 also fails to suggest that Congress intended to change the policy of reimbursement which existed before the Code's enactment.

Prior to enactment of the Code and new rules it was clear that expenses incurred by the creditors' committee in a Chapter 11 reorganization would be allowed as administrative expenses. Even after enactment of the Code, and before the new rules became effective, expenses of the committee appointed under Section 1102 could be reimbursed, relying upon the application of Rule 11–29. Promulgation of the new rules without language mirroring Rule 11–29 suggests a gap. But it is also apparent that there is no evidence of an intention not to allow reimbursement of the expenses incurred by committees appointed under Section 1102....

In the Code Congress imposed heavy duties upon the committee of unsecured creditors. Having taken the court out of administration, the Congress had to have an expectation that the committee would participate in the reorganization process. Otherwise, no one would represent the unsecured creditors who, having already invested without recourse in the debtor, would be unlikely to continue to do so unless assured that continued efforts would not be at their own expense and thus represent additional investment for which there was little hope of recovery. Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93d Cong. 1st Sess., pt I 103–117, reprinted in App. 2 Collier on Bankruptcy (15th Ed); 1 Collier on Bankruptcy Paragraph 6.01 (15th Ed); House Report No. 95–595, supra, 3–4, 96–1200, 104–105, 235–286.

*Global,* 45 B.R. at 260–261.[6] But see, *Evans Products,* 62 B.R. at 582 (S.D.Fla.1986) (noting that proposed revisions made by Commission on the Bankruptcy Laws which called for reimbursement of official committee expenses were ultimately not adopted by Congress).

For the foregoing reasons, I conclude that Section 503 authorizes the bankruptcy court to allow reimbursement of official committee expenses made "in furtherance of the authorized business and mission of that committee," *In re Evans Products Co.,* 62 B.R. 579, 582 (S.D.Fla.1986). Furthermore, I conclude that such expenses are

presumed to be expenses incurred toward the betterment of the estate and to the benefit of the estate. The only expenses of the [section] 1102 committee members that should not be reimbursed are those that are shown to be frivolous or not in furtherance of the betterment of the estate.

*Id.*

Accordingly, that portion of the bankruptcy court's order denying compensation

**6.** See also an exchange between Senators DeConcini and Dole that took place during the Bankruptcy Reform Act debate.

Mr. DeCONCINI: On another matter, confusion has arisen concerning the payment of necessary expenses incurred by a creditors' committee appointed under section 1102. Although there is not a specific provision providing for this type of expense in the code, this has long been the practice and the obvious equitable thing to do. Would you agree that this type of expense should be paid and that nothing in the recently enacted Bankruptcy Amendments and Federal Judgeship Act would suggest a different construction?

Mr. DOLE: I absolutely agree. It is essential for the orderly and professional administration of bankruptcy cases, that creditors and creditors committees that incur reasonable and necessary expenses in their service on creditor committees be reimbursed. Nothing in BAFJA was meant to change the well-settled practice of paying necessary expenses of creditors while serving on creditors committees.

130 Cong.Rec. S13771 (daily ed. Oct. 5, 1984) (remarks of Sen. DeConcini and Sen. Dole). As the court in *Global,* 45 B.R. at 261, correctly points out, however, "[t]his exchange ... does not resolve the problem because ... [the] problem about paying these expenses did not arise with the 1984 amendments [—] it came into being with the enactment of the Bankruptcy Reform Act (the Code) and was compounded by adoption of the new rules."

See also, *General Oil, supra,* 51 B.R. at 805 (Bankr.E.D.N.Y.1985) ("If anything, differences between the Act and the Code would suggest that Congress intended the practice to continue under the Code, and that perhaps the practice is essential to maintaining the scheme envisioned by the Code").

to the committee secretary and reimbursement of committee expenses is hereby VACATED. This matter is REMANDED to the bankruptcy court for proceedings consistent with this opinion.