**In re FIRSTPLUS FINANCIAL, INC., Debtor.**

**No. 99–31869–HCA–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 6, 2000.

---

David L. Campbell, Campbell & Cobbe, P.C., Dallas, TX, for Turner Broadcasting Systems, Inc.

Joseph M. Coleman, Joseph A. Freidman, Kane, Russell, Coleman & Logan, P.C., Dallas, TX, for FPFI Creditors' Trust.

Leonard M. Parkins, Trey A. Monsour, Verner Liipfert, et al., Houston, TX, for debtor.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court for hearing the application for administrative fees of Turner Broadcasting Systems, Inc. ("Turner Broadcasting") through Mr. John Sloan ("Sloan") in connection with his membership of the Unsecured Creditors Committee in the instant bankruptcy case.[1] Turner Broadcasting is seeking reimbursement of the attorney's fees and expenses billed to Turner Broadcasting by the law firm of Campbell & Cobbe, PC ("Campbell & Cobbe"), who represented Turner Broadcasting/Sloan in connection with Sloan's participation on the Unsecured Creditors Committee ("Committee"). The Committee was capably represented by the law firm of Kane, Russell, Coleman, & Logan, LLP, ("Committee Counsel"), whose representation was approved by the Court. This memorandum opinion constitutes findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 9014 and 7052. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## I. Background Facts

The facts were largely undisputed at the hearing on Turner Broadcasting's Application. As a way of giving some background, the Court will give a brief summary. Sloan was elected chairman of the Committee. Mr. David Campbell ("Campbell"), of Campbell & Cobbe, was hired individually by Turner Broadcasting through Sloan to act as Turner Broadcasting's individual counsel. Campbell, in fact, attended meetings of the Committee in Sloan's stead, not only as his attorney, but as his agent in the capacity of Committee chairman. Campbell performed many of the services to be performed by a Committee member/chairman, such as: interviewing experts, negotiating with the debtor and other creditors, listening to negotiations of the various incarnations of the Plan of Reorganization for hours, and attending other Committee meetings. In effect, Campbell was the alter ego of Sloan in these proceedings, and Sloan apparently allowed many of his duties and responsibilities as chairman of the Committee to be handled by his attorney, Campbell. Turner Broadcasting now requests that Campbell's fees be paid by the estate as a reimbursement of its expenses in connection with serving on the Unsecured Creditor's Committee.

## II. Issue

The issue for this Court to determine is whether committee members may recover attorney's fees from the estate under 11 U.S.C. § 503(b)(3)(F) and § 503(b)(4) for attorneys hired by them, without court approval, to represent their individual interests in a bankruptcy case. In essence, the Court must determine whether § 503(b)(3)(F), which was added to the Bankruptcy Code in 1994, expanded the list of professionals that may be compensated under § 503 to include the expenses and fees of counsel that may be hired by each individual member of the Committee,

---

1. Also before the Court is the application for administrative expense of Fox Sports Network, LLC ("Fox Sports"), for which no hearing was held. Fox Sports is seeking a similar award for the fees of Squadron, Ellenoff, Plesent & Sheinfeld, LLP, its individual counsel, and has agreed that the facts upon which it bases its application are identical to those of Turner Broadcasting. The Court will issue a separate issue on the application by Fox Sports based on this memorandum opinion.

in addition to the expenses and fees awarded to the committee's counsel.

## III. Analysis

Turner Broadcasting seeks reimbursement of Campbell's attorney's fees pursuant to *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394 (3rd Cir.1999), in which the Third Circuit allowed individual committee members to recover attorney's fees under 11 U.S.C. § 503(b)(3)(F) and § 503(b)(4) if the fees were incurred by the committee member for work performed in connection with service on the committee and if the court finds that the services and accompanying fees were necessary. This Court, by and through this memorandum opinion, respectfully disagrees with the Third Circuit.

▮▮▮ Prior to the 1994 amendments to the Bankruptcy Code, this Court held, in *In re Michigan General Corp.*, that individual creditors are not ordinarily entitled to recover attorney's fees.[2] This standard is no less true when the individual creditor is a member of the Committee. As stated by the Fifth Circuit in *Pierson & Gaylen v. Creel & Atwood, (In re Consolidated Bancshares, Inc.)*, "the policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process"[3] To achieve this goal, creditors are awarded fees only when they substantially contribute to the reorganization process.[4] This Court relied on the policy of § 503(b)(3) in *In re Michi-*

*gan General Corp.* to hold that "services of an attorney for a member of a creditors' committee are not compensable because they are solely for the benefit of the creditor and are of no benefit to the estate, or to the committee."[5] In other words, these types of services do not directly contribute to the reorganization process. As a result, a creditor's attorney must generally look to his client for payment and will not be compensated by the estate.[6]

▮▮▮ This Court does not believe that Congress intended the 1994 amendment to the language of § 503(b) to include the expenses and fees of counsel that may be hired by each individual member of the Committee in addition to the expenses and fees awarded to the committee's counsel. This Court concedes that, as the Third Circuit panel found in *First Merchants Acceptance Corp.*, a straightforward reading of §§ 503(b)(3) and (b)(4) in conjunction appears to permit such a result. Further, the Court is aware of "plain-meaning rule" of the Supreme Court for interpreting statutes, as stated by the Supreme Court in *United States v. Ron Pair:* "[where] the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"[7] Nevertheless, the Supreme Court has made exceptions to the plain language construction tool in rare cases where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling."[8]

**2.** 102 B.R. 554, 556 (Bankr.N.D.Tex.1988).

**3.** 785 F.2d 1249, 1253 (5th Cir.1986); *see also In re Fall*, 93 B.R. 1003, 1012 (Bankr. D.Or.1988) ("[o]ften a creditor will possess both knowledge and resources which, if applied properly, could benefit the estate. The language of 503(b)(3) reveals a policy of encouraging creditors to do so.").

**4.** *Id.*

**5.** *In re Michigan General Corp.*, 102 B.R. at 558; *see also In re Citizens Mortgage Investment Trust*, 37 B.R. 813, 829 (Bankr.D.Mass. 1984) (services of committee member not compensable because involvement was solely in creditor's interest).

**6.** *Id.* at 556; *see also In re Consolidated Bancshares, Inc.*, 785 F.2d at 1253.

**7.** *United States v. Ron Pair Enterprises, Inc. (In re Ron Pair Enterprises, Inc.)*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

**8.** *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982); *see also Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (stating that the court must search for other evidence of congres-

"Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention since the plain-meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." [9] As the Supreme Court in *Ron Pair* also said:

> The plain meaning of the legislation should be conclusive, except in the "rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters" ... [in such a case] the intention of the drafters, rather than the strict language, controls.[10]

 The Supreme Court has expressly stated in *Dewsnup v. Timm* that Congress does not write on "a clean slate" when it amends the bankruptcy laws.[11] In *Dewsnup*, the Supreme Court was reluctant "to accept arguments that would interpret the [Bankruptcy] Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." [12] Therefore, to attribute to Congress the intention to expand the Bankruptcy Code to allow fees and expenses for each professional hired by individual creditors without a clear statement of this intention in the legislative history is implausible and overwhelmingly contrary to basic bankruptcy principles.[13] Accordingly, this Court must look to the legislative history of § 503(b) in order to determine Congress' intent in amending the statute.

 Congress, in the Bankruptcy Reform Act of 1994, Pub.L. 103–394 § 110, entitled "Allowance of Creditor Committee Expenses," amended 11 U.S.C. § 503(b)(3), by adding the following to the list of entities who are entitled to recover actual and necessary expenses: "(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee." [14]

---

sional intent when the literal reading of a statutory term compels an odd result).

9. *Public Citizen v. U.S. Dep't. of Justice*, 491 U.S. 440, 455, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (quoting in part *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928)); *see also Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945) (Judge Learned Hand stated that although "the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing," nevertheless "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."); *see also United States v. American Trucking Ass'ns.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' ").

10. *United States v. Ron Pair Enterprises, Inc. (In re Ron Pair Enterprises, Inc.)*, 489 U.S.

235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)) (citation omitted).

11. 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (*Dewsnup*).

12. *Id.*

13. 502 U.S. at 420, 112 S.Ct. 773 (stating that to attribute to Congress the intention to grant a new remedy without mentioning the remedy in the Code or in the legislative history is implausible and "contrary to basic bankruptcy principles").

14. The relevant part of section 503(b)(3) reads as follows:

> (b) After notice and a hearing, there shall be allowed, administrative expenses ... of this title, including—
>
> ....
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> (A) a creditor that files a petition under section 303 of this title;

In the section-by-section analysis H.R. 5116, the house version of the bill that became Pub.L. 103–394, the Honorable Jack Brooks reported on § 110 as follows:

> The current Bankruptcy Code is silent regarding whether members of official committees appointed in chapter 11 cases are entitled to reimbursement of their out-of-pocket expenses (such as travel and lodging), and the courts have split on the question of allowing reimbursement.
>
> This section of the bill amends section 503(b) of the Bankruptcy Code to specifically permit members of chapter 11 committees to receive court-approved reimbursement of their actual and necessary out-of-pocket expenses. *The new provision would not allow the payment of compensation for services rendered by or to committee members.*[15]

In the Senate version of the amendments to the Bankruptcy Code, S. 540, the bill would have added § 503(b)(7) to the Code which would have allowed reimbursement of:

> The actual, necessary expenses incurred by a member of a committee appointed under section 1102 in the performance of duties of the committee (*including fees of an attorney or accountant for professional services rendered for the member to the extent allowable under paragraph*

> (4) ) other than claims for compensation for services rendered as a member of the committee.[16]

When the amendments to the Bankruptcy Code were passed by Congress in 1994, it was the House Bill that was passed and not the Senate Bill; and thus, 503(b)(3)(F) was added in lieu of the Senate's proposed § 503(b)(7) and the language emphasized by the Court including fees of an attorney or accountant for professional services rendered to a committee member. Congress did not discuss a significant change in the bankruptcy practice of § 503(b), because it did not intend to create a new avenue for attorneys or accountants hired by individual committee members to obtain fees and expenses. On the contrary, Congress stated in the statute's legislative history that it amended § 503(b) in order to permit members of chapter 11 committees to receive court approved reimbursement of their actual and necessary out-of-pocket expenses, such as travel expenses, that courts had been reluctant to give without explicit guidance from the Code.[17] The legislative history reveals that Congress intended the amendment to remedy the uncertainty of whether a committee member can be compensated for various out-of-pocket expenses in performing his or her duty, and did not intend to expand § 503(b) to allow every member of the committee to award his or her individually hired professional

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such

expenses are incurred in the performance of the duties of such committee[.]

15. H.R.Rep. No. 103–835, at 39, 103rd Cong., 2nd Sess. (1994) (footnote omitted) (emphasis added).

16. S.Rep. No. 103–168, at 6, 103rd Cong., 1st Sess. 6 (1993) (emphasis added).

17. The House Report cited the following cases that split on this issue: *In re Lyons Machinery Co., Inc.,* 28 B.R. 600, 601–02 (Bankr.E.D.Ark.1983); *In re Mason's Nursing Center, Inc.,* 73 B.R. 360, 363 (Bankr.S.D.Fla. 1987) (cases prohibiting reimbursements); *In re J.E. Jennings, Inc.,* 96 B.R. 500, 504 (E.D.Pa.1989); *In re Aviation Technical Support, Inc.,* 72 B.R. 32, 34 (Bankr.W.D.Tex. 1987) (cases permitting reimbursement).

with an administrative expense, as stated in the house report, "[t]he new provision would not allow the payment of compensation for services rendered by or to the committee members." [18]

The logic of this policy is proven in a case such as this one where the member of the Creditors' Committee hires an attorney to, in essence, serve as a substitute for the committee member and the attorney bills not only for travel and other reasonable expenses, but also for his fees as a professional at an hourly rate. Here, Mr. Campbell attended Creditors' Committee meetings, hearings and negotiations with the debtor over provisions in the plan of reorganization in place of Mr. Sloan, often simply listening to proceedings to report back to Sloan, or where legal services were rendered, simply duplicated the efforts of the attorneys hired by the Creditors' Committee to represent them as a whole.

Moreover, allowing attorneys of individual creditors to receive fees and expenses out of the estate conflicts with traditional bankruptcy and trust law because it allows individual creditors who serve on a creditors' committee to financially burden the debtor's estate in order to pay for an individually engaged attorney or accountant who will, inevitably, have a conflict of interest with the Committee Counsel. Such a result not only burdens the debtor, but it dilutes the return to creditors, depriving all classes of creditors of the benefits of the estate paid to every professional hired by individual members of the committee.[19] Furthermore, the inevitable burden and expense on the estate clashes with the ultimate aim of Chapter 11, which is saving businesses and jobs.

More worrisome, in addition to the financial burden on the estate, allowing attorneys of individual creditors to recover fees from the estate will result in divergent fiduciary obligations between the Committee's attorneys and the individual creditor's attorneys. In a Chapter 11 case, an Unsecured Creditors' Committee is appointed by the Office of the United States Trustee and owes a fiduciary duty to act on behalf of all unsecured creditors.[20] With court approval, the Creditors Committee hires counsel to represent the entity and become a fiduciary of both the creditors and of the court.[21] In contrast, an attorney hired individually by a member of the committee only owes a fiduciary duty to the principal that hired him, even at the expense of the other creditors, and is not subject to the safeguards of court approval.[22] Even the Third Circuit admits that "the plain language of the statute arguably is in conflict with the intent of Congress as reflected in the House Report but definitely conflicts with the requirement of § 1103 that the bankruptcy courts must approve the selection of lawyers to represent the committee." [23]

In the present case, Campbell was acting as the attorney and agent of Sloan and Turner Broadcasting, owing a fiduciary duty to Turner Broadcasting above all else. This situation is ripe for a conflict of interest between the creditor's attorney and the Committee Counsel if the Committee Counsel takes a position counter to the interests of the individual creditor in order

**18.** H.R.Rep. No. 103–835, at 39, 103rd Cong., 2nd Sess. (1994).

**19.** Theoretically, there might be attorneys and accountants hired by each individual member of the Committee, each expecting payment from the estate.

**20.** *United Steelworkers of America v. Lampl (In re Mesta Machine Co.),* 67 B.R. 151, 157 (W.D.Pa.1986).

**21.** *Id.* at 158 ("Counsel to a creditors' committee directly owes fiduciary duties to the Court and to the creditors' committee as officers of the Court.").

**22.** Rest. (Second) Agency § 387 (ALI 1958) ("unless otherwise agreed, an agent is subject to a duty to his principle to act solely for the benefit of the principal in all matters connected with his agency.").

**23.** *In re First Merchants Acceptance Corp.,* 198 F.3d at 402.

to protect the best interests of the unsecured creditor body as a whole. In such a situation, the individual creditor's attorney would be compelled to serve the agenda of his client against the interests of the Committee.

Finally, even if the statute entitles Turner Broadcasting to recover an administrative expense for Campbell & Cobbe's fees and expenses in this case, this court must still find that Campbell's services were necessary and reasonable before an administrative expense can be awarded to Campbell & Cobbe. Based on the discussion of the services provided above, this Court concludes that Mr. Campbell's fees were not necessary or justified in this case. The services were only of value to the individual creditor clients and were of no value to the estate and the other creditors.

## IV. Conclusion

In conclusion, the Court finds that Turner Broadcasting may not recover attorney's fees from the estate under 11 U.S.C. § 503(b)(3)(F) and § 503(b)(4) for Campbell & Cobbe, because § 503(b)(3)(F) was not added to the Code to award such fees to individual creditors as creditors' committee expenses and because Campbell and Cobbe did not demonstrate that the services rendered by Mr. Campbell were actual and necessary.

A separate order on this application will be entered consistent with this memorandum opinion.