**In re FIBREX, INC., Debtor.**

**No. 98–1810–JKC–11.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Dec. 4, 2001.

---

715

Grant Shipley, Ft. Wayne, IN, for Creditor–Objector.

Edward Cardoza, Ancel & Dunlap, Indianapolis, IN, for Debtor.

## ORDER PARTIALLY SUSTAINING DEBTOR'S OBJECTION TO VERIFIED APPLICATION OF CREDITORS' COMMITTEE FOR ALLOWANCE AND PAYMENT OF EXPENSES

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on the Verified Application of Creditors' Committee Chairman for Allowance and Payment of Expenses (the "Application") and on the Debtor's Objection thereto (the "Objection"). Following a hearing, the Court took the matter under advisement. Briefs were eventually submitted by the Debtor and the United States Trustee in support of the Objection; the Official

Creditor's Committee (the "Committee") filed a brief and reply brief on behalf of the Committee Chairperson, Robert Marshall ("Marshall"). Having reviewed all of the parties' submissions and relevant authorities, the Court issues the following Order, by which it partially[1] sustains the Debtor's Objection to the Application.

### Facts and Procedural History

Fibrex, Inc., the Debtor herein (the "Debtor"), commenced a case under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code") on February 13, 1998. The Debtor has continued as a debtor-in-possession throughout the pendency of the case. On February 24, 1998, the United States Trustee filed an Appointment and Notice of Appointment of the Official Unsecured Creditors' Committee. On February 26, 1998, Notice of Selection of Chairperson for the Committee of Creditors was filed by the Trustee, naming Marshall, on behalf of Linder Oil Company ("Linder"), as Chairperson.

On July 19, 2001, Marshall filed his Verified Application of Creditor's Committee Chairman for Allowance and Payment of Expenses. In support of the Application, Marshall filed several exhibits which detail various "expenses" allegedly performed in furtherance of Marshall's duties as the Committee Chairperson. The exhibits also indicate that these duties were performed by an unidentified person or persons at the rate of $25.00 per hour.

At the hearing on the Application, Marshall testified that, with the Committee's consent, he utilized the services of Donna Nijack, an administrative assistance at Linder, to assist him in performing his duties as Chairperson. Marshall asserted

1. As more fully explained infra, this Order does not resolve all of the objections raised by the Debtor to the Application. The Court will conduct another hearing to resolve the remaining issues.

that he needed Nijack's assistance, that he would not have been able to meet his Committee obligations without her, and that her work was extremely valuable to him, the Committee, and to the creditors as a whole.

The Debtor raised several objections to the Application, including whether $21,628.85 of Marshall's claimed expenses should be disallowed to the extent they seek reimbursement for "time spent" by Nijack, rather than actual and necessary expenses incurred by Marshall in the performance of his committee duties. The Debtor also objected to $8,612.21 in travel expenses because they again appear to seek reimbursement for "time spent," by Nijack, rather than actual travel costs. The Court sustains the Debtor's first objection and reserves judgment as to the second objection.[2]

### Discussion and Decision

■ Section 503(b)(3)(F) grants administrative expense priority to "the actual and necessary expenses ... incurred by a member of a committee appointed under Code § 1102 ... if the expenses are incurred in the performance of the duties of such committee." This provision was added to the Code by the Bankruptcy Reform Act of 1994 to address what had become a split among the courts as to whether a member of an official Chapter 11 committee was entitled to recover his or her actual and necessary expenses as an administrative priority expense. *See* Pub.L. 103–394 § 110. Unfortunately, the term "expense" as used in § 503(b)(3)(F) was not defined by the legislation, although the

legislative history behind the bill that eventually became Pub.L. 103–394 is instructive:

> The current Bankruptcy Code is silent regarding whether members of official committees appointed in Chapter 11 cases are entitled to reimbursement of their out-of-pocket expense (such as travel and lodging), and the courts have split on the question of allowing reimbursement. This section of the bill amends section 503(b) of the Bankruptcy Code to specifically permit members of Chapter 11 committees to receive court-approved reimbursement of their actual and necessary expenses. **The new provision would not allow the payment of compensation for services rendered by or to committee members.**

H.R.Rep. No. 103–835 at 39, 103d Cong., 2nd Sess. (1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3348 (footnote omitted) (emphasis added). The expenses falling within the scope of § 503(b)(3)(F) will most often consist of travel expenses for committee members to attend meetings. COLLIER ON BANKRUPTCY, ¶ 503.10[7], at 503–67 (15th ed.2000). Reimbursement for telephone charges, postage, messenger services and the like can also be sought. *Id.* Thus, it would appear that any expense claimed by Marshall for "time spent" by Nijack in assisting him or the Committee is not the type of expense eligible for reimbursement under § 503(b)(3)(F) and must be disallowed.

The case law that informed and precipitated the addition of § 503(b)(3)(F) fur-

---

**2.** The Court agreed at the hearing to bifurcate the issues presented and initially decide only whether "time spent" by an employee or agent of a committee member is entitled to administrative priority pursuant to Code § 503(b)(3)(F) as a matter of law. The Court and the parties reserved any argument or determination regarding whether the

amounts claimed by Marshall in his Application were "actual and necessary." The Court will therefore not address at this time, the Debtor's third objection to the Application, i.e., to $3,865.77 in copy costs claimed by Marshall, but will instead defer its decision until the next hearing on this matter.

ther clarifies the significance of the language emphasized above. The House Report cited the following cases as illustrative of the conflict that had arisen among the courts: *In re Lyons Machinery Co., Inc.*, 28 B.R. 600, 601–02 (Bankr. E.D.Ark.1983); *In re Mason's Nursing Center, Inc.*, 73 B.R. 360, 363 (Bankr. S.D.Fla.1987); *In re J.E. Jennings, Inc.*, 96 B.R. 500, 504 (E.D.Pa.1989); *In re Aviation Technical Support, Inc.*, 72 B.R. 32, 34 (Bankr.W.D.Tex.1987). *See* H.R.Rep. No. 103–835 at 39, n. 6, U.S.Code Cong. & Admin.News 1994, pp. 3340, 3348, n. 6. As these cases indicate, prior to the 1994 amendment, there was great controversy regarding whether official committee members were entitled to recover expenses relating to their committee participation as an administrative expense.

Many courts expressed concern that, under a restrictive interpretation of § 503(b), committee members were expected to bear the cost of their participation, notwithstanding the substantial contribution they often made to the case. *See e.g., Jennings*, 96 B.R. at 500. To several courts, this seemed inequitable and could ultimately discourage creditors from participating on official committees. *See id.; see also, In re Toy and Sports Warehouse, Inc.*, 38 B.R. 646, 648 (Bankr.S.D.N.Y. 1984) ("[P]articipation ... should not be chilled by requiring [official committee members] to finance their travel and out of pocket expenses incurred in attending official creditors' committee meetings.").

Based on a variety of rationales, a majority of courts agreed that committee members should be reimbursed for their expenses, e.g., costs relating to attending committee meetings. *See, e.g., Aviation Technical Support*, 72 B.R. at 34. Significantly, one of the cases cited in the House Report seemingly authorized reimbursement for out-of-pocket expenses, as well as compensation for members of the official creditors' committee. *Jennings*, 96 B.R. at 504–05. Other courts, however, refused reimbursement, finding that there was simply no statutory authorization for it. *See, e.g., Lyons*, 28 B.R. at 602 ("[I]n this Court's view, it is clear that Congress did not, in the original 1978 enactment of the Bankruptcy Reform Act, give the Bankruptcy Court the actual authority or the discretion to allow reimbursement of expenses under Section 503 to a creditors' committee appointed pursuant to Section 1102 of the Bankruptcy Code.").

■ It was in the wake of these conflicting cases that Congress amended § 503(b) to allow for reimbursement of official committee members' actual and necessary expenses incurred in the performance of their committee duties. However, as the legislative history indicates, Congress appears to have rejected the bankruptcy court's suggestion in *Jennings* that committee members should be compensated for their time. Rather, as further indicated in the legislative history, Congress intended to limit reimbursement to expenses for travel, lodging, food and the like.

■ In its reply brief, the Committee maintains that § 503(b)(3)(F) is unambiguous and that it is therefore improper to rely on legislative history to discern its meaning. Generally, the Court agrees that where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *See Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). However, as the United States Supreme Court has acknowledged, there are those rare cases in which the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling. *See United States v. Ron Pair Enterpris-*

es, Inc. (In re Ron Pair Enterprises, Inc.), 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Assuming that the statute is unambiguous for purposes of this discussion, the Court believes that this is one of those rare cases.[3]

Pursuant to § 1103(a) of the Code, an official committee is empowered to "select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." The committee must obtain judicial approval before hiring any type of professional or agent. Id. According to Committee's argument, however, a committee member could delegate his or her duties to an agent or employee without prior judicial approval or creditor input. The Court cannot conclude that Congress intended such an inconsistency, especially when, as here, it appears that Nijack worked for the Committee and for counsel for the Committee, as much as she did for Marshall. Code § 1103(a) cannot be avoided in this manner.

As constructed by the Committee, § 503(b)(3)(F) presumably would allow *any* member of an official committee to retain an agent or employee to perform or assist in the performance of committee duties at the estate's expense. The Court cannot conclude that Congress intended the estate to bear an expense of this type or magnitude. A creditor, in choosing to participate on a committee, is able to protect his or her own interests and exert considerable influence on the reorganization process. In return, the creditor agrees to bear the costs and responsibilities of committee membership. While the Court does not wish this to be a "thankless job," it also does not wish to encourage committee members to delegate their duties at the expense of other creditors, especially since many of the costs associated with committee membership can be recovered under 503(b)(3)(F) or through the Committee's employment of an attorney and other professionals whose fees are clearly eligible for administrative priority.

### Conclusion

Based on the foregoing, the Court's reliance on § 503(b)(3)(F)'s legislative history is warranted and leads the Court to conclude that any expenses related to "time spent" by Nijack must be disallowed. This includes at least $21,628.85 of Marshall's claimed expenses. While the Debtor has objected to an additional $8,612.21 in expenses as relating to "time spent" by Nijack, it appears from the Application that at least most of these expenses relate to

**3.** The Court notes that there is little case law interpreting § 503(b)(3)(F). Two cases, *In re First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394 (3d Cir.2000) and *In re Firstplus Financial, Inc.*, 254 B.R. 888 (Bankr.N.D.Tex.2000), deal primarily with the interplay between Code §§ 503(b)(3)(F) and 503(b)(4) in determining whether a committee member can be reimbursed, as an administrative expense, for his or her legal fees. Unfortunately, these cases shed little light on the issue presented here. The Court also notes the decision rendered in *McDow v. Official Committee of Equity Security Holders of Criimi Mae Inc. (In re Criimi Mae)*, 247 B.R. 146 (D.Md.1999), in which the court held that committee members were entitled to recover, as an administrative expense, the cost of liability insurance purchased as a result of their participation on the committee. The court ultimately concluded that "there is no basis for distinguishing between specific kinds of committee member expenses. If the expense would not have been incurred but for an individual's service on a section 1102 committee, it may be reimbursable ...." *Id.* at 151. The Court agrees that a broad range of expenses, assuming that they are actual and necessary, may be recovered pursuant to § 503(b)(3)(F). However, the legislative history makes clear that amounts relating to services provided by or to a committee member are not entitled to administrative expense priority.

out-of-pocket travel and postage expenses and, thus, are entitled to payment as an administrative expense. The Court will determine their exact nature [4] and whether they were actual and necessary following the next hearing on this matter, which will be held on January 10, 2002, at 10:00 a.m. in Room 325 of the United States Courthouse, 46 E. Ohio St., Indianapolis, Indiana. If it appears that any of these expenses relate to "time spent," they too will be disallowed.

4. The Court is especially interested in learning the nature of the entry on 9/30/99 for "Professional Consulting Services Render."